# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MICHELLE DOTSON, BRIDGETTE LOTT AND REGINOLD STEPHENS** Individually, **RONALD DOTSON,** Individually and Personal Representative of the Estate of **JANICE DOTSON-STEPHENS,** deceased**,** | §<br>§<br>§ | |
| **Plaintiffs,** § | | **CAUSE NO.: SA-19-CV-00083-XR** |
| **V.** | § | |
| **BEXAR COUNTY, SHERIFF JAVIER SALAZAR,** Individually and Officially as an agent and/or employee of Bexar County Sheriff's Office, **BEXAR COUNTY HOSPITAL DISTRICT d/b/a UNIVERSITY HEALTH SYSTEMS, UNIVERSITY HEALTH SYSTEMS DIRECTOR JESSICA C. YAO [or "Acting Director"],** Officially as an agent and/or employee of UHS, **BEXAR COUNTY PRETRIAL SERVICES DIRECTOR MIKE LOZITO,** Officially as an agent and/or employee of Bexar County, **SAPD OFFICER MICHAEL KOHLLEPPEL,** Officially as an agent and/or employee of San Antonio Police Department**, CITY OF SAN ANTONIO,** | §<br>§<br>§ | |
| **Defendants.** § | | |

## PLAINTIFF'S FOURTH AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES MICHELLE DOTSON, BRIDGETTE LOTT, REGINOLD STEPHENS Individually, and RONALD DOTSON, Individually and as the Representative for the Estate of JANICE DOTSON-STEPHENS (Plaintiff-Decedent), hereinafter called "Plaintiffs," complaining of and about BEXAR COUNTY, SHERIFF JAVIER SALAZAR, BEXAR COUNTY HOSPITAL

1

DISTRICT d/b/a UNIVERSITY HEALTH SYSTEMS [hereinafter "UHS"], UHS DIRECTOR JESSICA YAO [or "Acting Director"], PRETRIAL SERVICES DIRECTOR MIKE LOZITO, the CITY OF SAN ANTONIO, and SAPD OFFICER MICHAEL KOHLLEPPEL, hereinafter called "Defendants," and for cause of action shows unto the Court the following:

## PARTIES AND SERVICE

1.      Plaintiff RONALD DOTSON, surviving son of Plaintiff-Decedent, is an individual and is a resident of Guadalupe County, Texas and brings this suit on behalf of himself and as the personal representative of the Estate of JANICE DOTSON-STEPHENS, his deceased mother, also a resident of Bexar County, Texas.

2.      Plaintiff MICHELLE DOTSON, surviving daughter of Plaintiff-Decedent, is an individual and a resident of the State of Texas.

3.      Plaintiff BRIDGETTE LOTT, surviving daughter of Plaintiff-Decedent, is an individual and is a resident of the State of Texas.

4.      Plaintiff REGINOLD STEPHENS, surviving husband of Plaintiff-Decedent, is an individual and is a resident of the State of Texas.

5.      As used herein, "Plaintiff(s)" shall include not only named Plaintiffs, but also persons whose claims are being represented by a Plaintiff(s).

6.      Defendant BEXAR COUNTY is a municipal corporation organized under the laws of the State of Texas. Bexar County Sheriff's Department is a division of Bexar County and operates the Bexar County Jail. The County funds and operates the jail, employs and compensates the jail staff, and is charged with ensuring that, at all times, the jail remains in compliance with federal and state law. The County is a recipient of federal funds. "A municipality is liable under this chapter for damages arising from its governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public."[1] Bexar County may be

---

[1] Tex. Civ. Prac. & Rem. § 101.0215

served with process by serving Nelson Wolff as County Judge of Bexar County, at 101 W. Nueva, 10th floor, San Antonio, Texas, 78205. Service of said Defendant as described above can be effected by personal delivery.

7. Defendant Sheriff JAVIER SALAZAR is named officially and individually and may be served with process at 200 N Comal, San Antonio, Texas, 78207. At all times relevant to this cause, he was operating in the course and scope of his agency and/or employment relationship with the Bexar County Sheriff's Office. Under Tex. Local Gov't Code § 351.041 and Tex. Code Crim. Proc. Art. 16.21, the Sheriff is responsible for those incarcerated at his jail and is "the keeper of the county jail," "shall safely keep all prisoners committed to the jail," and "shall continue to exercise supervision and control over the jail." It is Sheriff Salazar's responsibility to hold detainees in a manner consistent with his oath to uphold both the Texas and United States Constitutions.[2] The Sheriff of a county serves as the jail administrator any time there is not a person available who satisfies the examination requirements set forth in Tex. Gov't Code § 511.00905 and "if there is a vacancy … the sheriff shall serve as administrator of the jail until a new administrator is appointed and assumes the position."[3]

8. Defendant BEXAR COUNTY HOSPITAL DISTRICT D/B/A UNIVERSITY HEALTH SYSTEM may be served with process by serving Dr. Dianna M. Burns-Banks (secretary of the board) at 1954 E. Houston, San Antonio, Texas, 78202. Service of said Defendant as described above can be effected by personal delivery. The Texas Supreme Court has held that county hospital districts are political subdivisions of the State authorized by the Texas Legislature to "provide for the establishment of a hospital or hospital system to furnish medical aid and hospital care to indigent and needy persons residing in the district."[4] The Adult Detention Center website lists

---

[2] *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018).
[3] Tex. Local Gov't Code § 351.034(d).
[4] *Rodriguez v. Bexar Cnty.*, Civil Action No. SA-18-CV-248-XR, 2018 U.S. Dist. LEXIS 157585 (W.D. Tex. 2018) discussing *Klein v. Hernandez*, 315 S.W.3d 1, 7 (Tex. 2010) (quoting Tex. Health & Safety Code § 281.002(a)).

clinic, in-patient care, and primary care services as being provided by University Health Systems.[5] Additionally, under this Court's holding in *Rodriguez v. Bexar Cnty.*, the Court separated entities for purposes of determining liability. This Court stated that "Bexar County and Bexar County Hospital District d/b/a University Health System ("UHS") are distinct legal entities. Therefore, it must ultimately be determined which entity employed each individual Defendant."[6]

9.    Defendant BEXAR COUNTY HOSPITAL DISTRICT D/B/A UNIVERSITY HEALTH SYSTEM DIRECTOR JESSICA C. YAO [or "Acting Director" during the time period from July 17, 2018 through December 14, 2018], is named officially and may be served with process at 7330 San Pedro Ave., #540, San Antonio, TX, 78216-6250.  Service of said Defendant as described above may be effected by personal delivery. At all times relevant to this cause, she was the policymaker operating within the course and scope of her agency and/or employment relationship with Bexar County Hospital District d/b/a University Health System (a separate legal entity from Bexar County.)

10.    Defendant Pretrial Services Director MIKE LOZITO is named officially and may be served with process by serving Leticia Moreno – Pretrial Manager at 207 N. Comal #200 San Antonio, Texas, 78207. "A municipal policymaker is someone who has the responsibility for making law or setting policy in any given area of a local government's business."[7] Thus, municipal liability attaches where "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."[8] "Whether an official possesses final policymaking authority for purposes of municipal liability is a question of state and local law."[9] At all times relevant to this cause, Defendant Mike Lozito was the policymaker operating within the course and scope of

---

[5] "Primary Care Services Provided By: University Health Systems, Correctional Health Care Services." https://www.bexar.org/737/Medical-Services.

[6] *Rodriguez v. Bexar Cnty.*, 2018 U.S. Dist. LEXIS 157585 (W.D. Tex. September 17, 2018).

[7] *Ramirez v. Escajeda*, 298 F. Supp. 3d 933, 942 (W.D. Tex. 2018) citing *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (internal quotation marks omitted) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)).

[8] *Id.* (internal quotation marks omitted) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)).

[9] *Id.*

his agency and/or employment relationship with Bexar County Pretrial Services (a servient entity of Bexar County).[10]

11.    Defendant San Antonio Police Department Officer MICHAEL KOHLLEPPEL, Badge #1637, is named officially and may be served with process at 315 South Santa Rosa, San Antonio, Texas, 78207. Service of said Defendant as described above may be effected by personal delivery. At all times relevant to this cause, he was operating in the course and scope of his agency and/or employment relationship with the San Antonio Police Department/City of San Antonio.

12.    Defendant CITY OF SAN ANTONIO may be served with process by serving Leticia Vacek, City Clerk, at 114 W. Commerce, San Antonio, Texas, 78205. The Fifth Circuit has consistently held that municipal entities and local governing bodies do not enjoy immunity from suit, either absolute or qualified, under a civil action for deprivation of rights.[11]

13.    In anticipation of the potential argument by some of the Defendants listed above that they either are not the cause of Plaintiff-Decedent JANICE DOTSON-STEPHENS' injuries or they are not the "policymaker" responsible for the creation or implementation of procedures and law relative to this case, Plaintiffs request the court to look to not only Fifth Circuit decisions, but Supreme Court decisions as well. The *Booth* court discusses in some detail that **plaintiffs need not establish proximate causation of their injuries, but rather, only "need only allege an injury that can be fairly traced to the actions of a particular defendant."**[12] Regarding whether a particular Defendant is a policymaker for the purposes of establishing liability, Plaintiffs urge the court to look to Texas statutory law and judicial opinions for holding municipalities liable.

14.    In addition to Plaintiffs' claims against named and unnamed Defendant Officers/Officials, Plaintiffs are suing BEXAR COUNTY and the CITY OF SAN ANTONIO. A city

---

[10] *See* https://www.bexar.org/2065/Judicial-Services (last visited April 24, 2019).
[11] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466-67 (5th Cir. 1999) citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993).
[12] *Booth v. Galveston Cnty.*, No. 3:18-CV-00104, 2018 U.S. Dist. LEXIS 218967, at *20 (S.D. Tex. 2018) discussing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011), and *Bennett v. Spear*, 520 U.S. 154, 168-69, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997) (emphasis added).

or county is liable for the actions of its employees because **the constitutional violations were caused by Bexar County's and the City of San Antonio's failure to follow clearly defined Texas laws and city policies**.[13]

15.    Defendants are not entitled to qualified immunity because, at the time of the multiple violations listed above, a reasonable Officer/Official with the same information could not have believed that Defendants' actions were lawful. **Law enforcement officers and government officials are presumed to know the clearly established constitutional rights of individuals they encounter**.[14] Defendants are liable as supervisors of individually named and unnamed employees, officers, supervisors, and contractors because Defendants' own conduct denied Plaintiff-Decedent JANICE DOTSON-STEPHENS of her constitutional rights.[15]

## JURISDICTION AND VENUE

16.    This Court has jurisdiction over the claims raised in this Complaint under 42 U.S.C. § 1983, 28 U.S.C. § 1331 and 1343, and the Eighth and Fourteenth Amendments to the United States Constitution.

17.    Venue is appropriate in the Western District of Texas under 28 U.S.C. § 1391 as Defendants reside, and the acts complained of arose in the Western District of Texas.

18.    The subject matter in controversy is within the jurisdictional limits of this court.

## FACTUAL ALLEGATIONS

19.    At the time of her death, Plaintiff-Decedent JANICE DOTSON-STEPHENS was a pretrial detainee for constitutional purposes.

20.    Plaintiff-Decedent JANICE DOTSON-STEPHENS suffered for decades from known mental illness, specifically schizoaffective disorder, as well as hypertension. She had been involuntarily committed at the San Antonio State Hospital numerous times in her past when she experienced crisis episodes. During her crisis episodes, she would be unable to think clearly and

---

[13] *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (emphasis added).
[14] *Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (emphasis added).
[15] *Id.*

would experience hallucinations, disorientation, and confusion. The doctors at the State Hospital would stabilize her through medication and according to her family, she would be able to function normally within two to three months under medication. Her mental illness prevented her from performing major life activities, such as working and caring for herself. Due to her mental illness, she was unable to work and received Social Security disability benefits.

21.     From as early as July 1996 through July 2018, Plaintiff-Decedent JANICE DOT-SON-STEPHENS had an extensive police record with the San Antonio Police Department prior to the arrest at issue, including **at least three** explicitly identified "**mental health disturbance**" situations, two of those requiring "**emergency mental health detentions**," one on March 18, 2014 and the other on September 1, 2017 [Plaintiffs' Complaint Exhibit 1]. Her documented mental health history spanning decades was readily ascertainable to all Defendants at arrest and throughout her time incarcerated at Bexar County Jail from July 17, 2018 until December 14, 2018.

22.     On or about July 17, 2018, Defendant San Antonio Police Department Officer MICHAEL KOHLLEPPEL was a licensed Texas Peace Officer employed by the San Antonio Police Department. Additional SAPD officers, Sergeant Ramirez and Officer Lowery, were present at the scene, interacted with Plaintiff-Decedent JANICE DOTSON-STEPHENS, and observed her mental health crisis that was exhibited by her incoherent and erratic behavior.

23.     On or about July 17, 2018, Plaintiff-Decedent JANICE DOTSON-STEPHENS' estranged husband, Reginold Stephens, resided at the property, Mount Zion Sheltering Arms (an affordable housing complex for the elderly and disabled), where she was arrested.

24.     On or about July 17, 2018, per the police report, Plaintiff-Decedent JANICE DOT-SON-STEPHENS refused to give arresting Defendant Officer MICHAEL KOHLLEPPEL her name and "then got mad and stated 'If your (sic) going to take me to jail, then take me. Im (sic) not leaving the location because I live here."

25.     On or about July 17, 2018, Defendant Officer MICHAEL KOHLLEPPEL advised Plaintiff-Decedent JANICE DOTSON-STEPHENS to leave and that she was going to be issued a trespass warning, but instead, arrested her upon her own insistence.

26.     On or about July 17, 2018, Defendant Officer MICHAEL KOHLLEPPEL placed Plaintiff-Decedent JANICE DOTSON-STEPHENS in handcuffs, Officer Lowery #1556 searched her, and then Defendant Officer MICHAEL KOHLLEPPEL **transported her to jail** to be booked for criminal trespassing, a class B misdemeanor **rather than process her for Warrantless Emergency Detention.**

27.     On or about July 17, 2018, Plaintiff-Decedent JANICE DOTSON-STEPHENS, while exhibiting behavior consistent with mental illness, was arrested, processed, and jailed for an allegation of criminal trespass onto private property, a Class B misdemeanor, punishable under Texas law by a fine not to exceed $2,000, a maximum of six (6) months in jail, or both such fine and confinement.[16]

28.     On or about July 17, 2018, Plaintiff-Decedent JANICE DOTSON-STEPHENS was processed and jailed at the Bexar County Jail, operated by Defendant Sheriff JAVIER SALAZAR and an "unknown" jail administrator. The "Arrest & Booking Sheet" and police report indicated she was "homeless" which was incorrect and Defendants failed to ascertain.

29.     On or about July 17, 2018, and at all times relevant through December 14, 2018, the mother of four (4) and grandmother of ten (10) spent 150 days, more than five (5) months, without seeing the inside of a Bexar County courtroom or appearing before a Bexar County judge for an allegation of a Class B misdemeanor.

30.     According to Bexar County Pretrial Services' website, the role of pretrial intake staff is to:  interview defendants to determine risk, investigate bond applications, make recommendations of conditions to the Judge or Magistrate regarding release on Personal Recognizance Bond (PR Bond), determine eligibility for IDAAS - Indigent Defense Attorney Appointment System, assign a Court Appointed Attorney, and provide information to the public regarding the status of defendants who were interviewed for PR Bond.[17]

---

[16] Tex. Penal Code § 12.22
[17] http://home.bexar.org/pretrial/INTAKE.html

31.     On or about July 17, 2018, and at all times relevant though December 14, 2018, Defendants at the Bexar County Jail were required to offer Plaintiff-Decedent JANICE DOTSON-STEPHENS the opportunity to bond out. Bond was set at $300.00; however, **she was not offered the opportunity for a personal recognizance bond.**

32.     On or about July 17, 2018, and at all times relevant through December 14, 2018, Plaintiff-Decedent JANICE DOTSON-STEPHENS remained in jail waiting on either Bexar County case #582687 to be adjudicated or to pay the $300 bond for her release from Bexar County Jail.

33.     From July 17, 2018 to August 8, 2018, for eighteen (18) days, Plaintiff-Decedent JANICE DOTSON-STEPHENS was not appointed an attorney by the court, even though she immediately elected to have a court appointed attorney as evidenced by the "Magistrate Warning" on the day of her arrest, July 17, 2018 [Plaintiffs' Complaint Exhibit 3].

34.     On August 8, 2018, eighteen (18) days after her arrest and incarceration, Plaintiff-Decedent JANICE DOTSON-STEPHENS was appointed an attorney.

35.     From August 8, 2018 to December 14, 2018, it is unknown whether Plaintiff-Decedent JANICE DOTSON-STEPHENS ever met with her court appointed attorney.

36.     According to county clerk and district clerk court records, case #582687, from July 17, 2018 to August 4, 2018, Plaintiff-Decedent JANICE DOTSON-STEPHENS refused interviews on six (6) different occasions (July 18, 27, 28, 29, 30, and August 4, 2018) and refused to go to court … additional indicators of her mental illness and decline in mental health.

37.     On August 17, 2018, Plaintiff-Decedent JANICE DOTSON-STEPHENS refused to go to jail court, another indication of her deteriorating mental capacity and mental illness.

38.     From July 17, 2018 to December 14, 2018, Plaintiff-Decedent JANICE DOTSON-STEPHENS was not afforded the opportunity or benefit she was entitled to from the Bexar County Public Defender's Office (BCPDO) Mental Health Defender Program to assist her as a defendant with mental illness.

39.     On or about July 17, 2018, Bexar County Jail "unknown" employee(s) was a screening officer(s) responsible for screening Plaintiff-Decedent JANICE DOTSON-STEPHENS.

40.     On or about July 17, 2018, and at all times relevant through December 14, 2018 all named Defendants were aware of Plaintiff-Decedent JANICE DOTSON-STEPHENS' mental health condition and failed to appropriately respond to her mental health needs.

41.     On August 20, 2018, thirty-four (34) days after her arrest, a "UHS" psychiatrist wrote to the court that Plaintiff-Decedent JANICE DOTSON-STEPHENS "may be unable to assist her attorney in the preparation of her defense due to mental illness and may require a competency evaluation" [Plaintiffs' Complaint Exhibit 4].

42.     It was not until August 27, 2018 that the court ordered a psychological evaluation for competency through "UHS," forty (40) days after Plaintiff-Decedent JANICE DOTSON-STEPHENS was arrested [Plaintiffs' Complaint Exhibit 5].

43.     On or about July 17, 2018, and at all times relevant through December 14, 2018, it is unknown whether more than a cursory psychological evaluation was performed. If a complete mental health evaluation was performed, it was either misplaced or mishandled and is not a part of Plaintiff-Decedent JANICE DOTSON-STEPHENS' jail or medical records.

44.     On September 5, 2018, the court ordered the offense report be forwarded to University Health Systems, the infirmary at the Bexar County Jail.

45.     On January 1, 2017, Defendant Sheriff JAVIER SALAZAR was sworn into office. Prior to being elected Sheriff, Defendant Sheriff JAVIER SALAZAR served with the San Antonio Police Department for twenty-three (23) years, most recently as their public information officer.

46.     On July 24, 2017, **seven (7) months after assuming his role as sheriff and almost eighteen (18) months before Plaintiff-Decedent JANICE DOTSON-STEPHENS died**, Defendant Sheriff JAVIER SALAZAR received written notice from the Texas Commission on Jail Standards outlining the requirements sheriffs must follow to comply with the newly enacted S.B. 1849 ("The Sandra Bland Act"). S.B. 1849 amended Tex. Code Crim. Proc. Art. 16.22 and required compliance by specific dates in 2018, well before the arrest and death of Plaintiff-Decedent

JANICE DOTSON-STEPHENS [Plaintiffs' Compliant Exhibit 2].

47.    The 85th Legislature, amended Acts 2017, chapter 748 and chapter 950 (S.B. 1849) relative to the Tex. Code Crim. Proc. Art. 17.032 - "Release on personal bond of certain defendants with mental illness or intellectual disability." These changes directly illustrate the pretrial recommendations and magistration process of mentally ill defendants.

48.    The Texas Commission on Jail Standards, through the Tex. Admin. Code, dictates the health services required for all Texas jails. Section 273.5 outlines the responsibilities and requirements of each sheriff/operator in coordination with mental health officials for developing and implementing a mental disabilities/suicide prevention plan, including: training, identification, reviewing, screening, communication, housing, supervision, intervention and emergency treatment, and checking the mental health history and background of all inmates admitted.[18]

49.    By law, Defendants were required to "give prisoners the ability to access a mental health professional at the jail through a telemental health service 24 hours a day" and "give prisoners the ability to access a health professional at the jail or through a telehealth service 24 hours-a-day or, if a health professional is unavailable at the jail or through a telehealth service, provide for a prisoner to be transported to access a health professional."[19]

50.    On or about April 5, 2018, Assistant Bexar County Jail administrator Laura Balditt abruptly tendered her retirement from the Sheriff's Office, hours after Defendant Sheriff JAVIER SALAZAR held a press conference discussing a thwarted jail escape attempt.

51.    On or about April 6, 2018, Ruben Vela was promoted to Deputy Chief and interim Assistant Jail Administrator at the Bexar County Adult Detention Center Facility.

52.    On or about September 28, 2018, Assistant Chief Deputy and Jail Administrator Bobby Hogeland resigned abruptly following reports indicating possible inappropriate expenditures. Bexar County Judge Nelson Wolff was quoted as saying, "[h]e was a nice guy but he didn't have any administrative experience … [Hogeland] came straight from the U.S. Marshal's

---

[18] 37 Tex. Admin. Code § 273.5
[19] Tex. Gov't Code § 511.009(a)(23)(A-B)

Service"[20] [Plaintiffs' Complaint Exhibit 6].

53.     From September 28, 2018 to December 21, 2018, Ruben Vela acted as interim jail administrator and the position for a permanent jail administrator, all the while the position for permanent jail administrator remained vacant and the job had not been posted as an open position by Defendant Sheriff JAVIER SALAZAR. Coincidentally, it was not until December 21, 2018 that the county posted the position which was the same date this action was filed [Plaintiffs' Complaint Exhibit 7].

54.     On or about January 26, 2019, Defendant Sheriff JAVIER SALAZAR suspended Deputy Chief Ruben Vela and appointed Captain Avery Walker to assume responsibility over the jail after an inmate was released without a required electronic monitor.

55.     As of February 22, 2019, the Bexar County Jail was listed on the Texas Commission on Jail Standards website as having been found in noncompliance with Texas Minimum Jail Standards as codified in the Texas Administrative Code, Title 37, Part 9 [Plaintiffs' Complaint Exhibit 8]. Counties are listed upon verification that the county has received the official notice of noncompliance, and counties are removed immediately upon attaining compliance. (As of the date of this amended Complaint, Bexar County Jail was still listed in noncompliance.[21])

56.     From January 19, 2018 through February 22, 2019, Bexar County Jail had five (5) deaths, one (1) suicide, and four (4) escapes in a twelve (12) month inspection period [Plaintiffs' Complaint Exhibit 9].

57.     From January 19, 2018 through February 22, 2019, Bexar County Jail failed to meet the statutory standards required by the Texas Commission on Jail Standards, including multiple violations of 37 Tex. Admin. Code § 267, 271, 273, 275, and 285 [Plaintiffs' Complaint Exhibit 9].

58. Bexar County Judge Nelson Wolff commented on the events that lead to JANICE DOTSON-STEPHENS death, "**A lot of incompetence. A lot of breakdown. She never should**

---

[20] https://www.mysanantonio.com/news/local/article/BCSO-chief-deputy-resigns-abruptly-13265944.php
[21] https://www.tcjs.state.tx.us/index.php?linkID=340

**have been there**" [Plaintiffs' Complaint Exhibit 10].

59.     On or about July 17, 2018, and at all times relevant through December 14, 2018, Defendant MIKE LOZITO, Director of Bexar County Pretrial Services, was responsible for creating and following the policies required by his division for interviewing defendants to determine risk, making recommendations to the judge or magistrate regarding release on PR bonds, determining eligibility and assigning court appointed attorneys through the IDAAS (Indigent Defense Attorney Appointment System), and providing information to the judicial system for release decisions and structured supervision of defendants on pretrial status.

60.     Defendant BEXAR COUNTY HOSPITAL DISTRICT D/B/A UNIVERSITY HEALTH SYSTEMS ["UHS"] is responsible for the medical treatment of all inmates at the Bexar County Jail and provided medical and mental health care to Plaintiff-Decedent JANICE DOTSON-STEPHENS while she was incarcerated.[22]

61.     From July 17, 2018 to December 14, 2018, **for 150 days**, Plaintiff-Decedent JANICE DOTSON-STEPHENS was housed in the "Infirmary/OB + Annex - JA-BX CNTY AN-NEX GP (J208)" as a "medical non-process" inmate under the care of Defendants BEXAR COUNTY HOSPITAL DISTRICT D/B/A UNIVERSITY HEALTH SYSTEMS ["UHS"] and UHS Director JESSICA C. YAO. The referral reasons in her chart stated, "patient has a hx of HTN" (hypertension) and "hx of schizophrenia."[23] She was described as "**severely impaired**" and her condition charted as "**chronic mental illness**."[24] Her intake record also reflects and acknowledges her prior hospitalizations related to mental illness in "2007, 2010" at the "NIX, NTSH-VSH" facilities.[25]

62.     From July 17, 2018 to December 14, 2018, **for 150 days**, Defendant UHS' doctors, nurses, and counselors documented Plaintiff-Decedent JANICE DOTSON-STEPHENS' history

---

[22] "Primary Care Services Provided By: University Health Systems, Correctional Health Care Services." https://www.bexar.org/737/Medical-Services
[23] Source: medical records received by Plaintiffs' counsel on April 23, 2019.
[24] *Id*.
[25] *Id*.

of mental illness, going back to as early as 2007, indicating they had copies of her medical and mental health history from prior to her incarceration.

63.     From July 17, 2018 to December 14, 2018, **for 150 days**, Plaintiff-Decedent JANICE DOTSON-STEPHENS, according to the medical records, **lost 136 pounds** (her weight at intake with UHS was 290.61 lbs. and 154 lbs. according to the autopsy), **almost a pound per day**, while incarcerated at Bexar County Jail under the supervision of Defendant Sheriff JAVIER SALAZAR and under the care of Defendant UHS and UHS Director JESSICA C. YAO.

64.     From July 17, 2018 to December 14, 2018, **for 150 days**, Plaintiff-Decedent JANICE DOTSON-STEPHENS was seen by at least **thirty-two (32)** different UHS employees/contractors for medical and mental health evaluations, observations, and recommendations.

| DOCTOR/NURSE[26] | # TIMES SEEN |
|---|---|
| Barcenas, Lisa (MA) | 2 |
| Charro, Rebecca R (LVN) | 7 |
| Coats, Sade N (LVN) | 8 |
| Cuellar, Patricia A (LVN) | 4 |
| Dagenais, Wendy (LPC, LCDC) | 89 |
| Dalman, Jennifer R (LVN) | 6 |
| Doty, Sue (MD) | 2 |
| Garcia, Cesar A (MD) | 5 |
| Gover, John (UNASSIGNED) | 1 |
| Hinds, Carl E (RN) | 2 |
| Howe, Arline N (LVN) | 21 |
| Hyer, Katherine E (LMSW) | 1 |
| Johnson, Sharnese L (LVN) | 1 |
| Johnson, Tanesha D (LMSW) | 1 |
| Jones, Chester R (NP) | 13 |
| Kattapuram, Smitha J (RN) | 1 |
| Kouri, Kaitlyn K (LMSW) | 28 |
| Machuca, Illiana M (LVN) | 2 |
| Mangano, Mary F (LVN) | 3 |
| Martinez, Emma V (RN) | 66 |
| Merchant, Irfan (RN) | 2 |
| Noyola, Roxanna D (LVN) | 1 |
| Peaslee, Veronica G (LVN) | 5 |
| Ramirez, Adrian A (LMSW) | 23 |

---

[26] Source: medical records received by Plaintiffs' counsel on April 23, 2019.

| | |
|---|---|
| Ramos, Florinda R (LVN) | 80 |
| Salazar, Rose A (LVN) | 42 |
| TAYLOR MD, SALLY E (MD) | 1 |
| Vestal, Betty J (RN) | 1 |
| Wagner, Sherrece J (LVN) | 71 |
| Williamson, Vanessa B (MSW) | 3 |
| Yao, Jessica C (DIRECTOR) | 1 |
| Zigmond, Darlene A (LVN) | 1 |
| **Grand Total** | **494** |

65.　　From July 17, 2018 to December 14, 2018, **for 150 days**, Plaintiff-Decedent

JANICE DOTSON-STEPHENS was seen by doctors, nurses, and counselors **at least 494 times,**

as charted in her medical records provided by Defendant UHS.

| TYPE OF VISIT[27] | # TIMES SEEN |
|---|---|
| Admit to OB infirmary | 1 |
| Code 1 & Treatment Room Record | 2 |
| Continuity of Care Note | 1 |
| Initial Health Assessment | 1 |
| Inpt. Nursing Admission | 2 |
| Internal Referral Note | 1 |
| Jail Vital Signs | 1 |
| Kardex | 1 |
| Medical Screening | 1 |
| Mental Health Assessment | 1 |
| Mental Health Progress Note | 1 |
| Mental Health Rounds Note | 138 |
| Mental Health Telephone Contact | 6 |
| Nurses Note | 294 |
| Psych Progress Note | 19 |
| Refusal of Medical Services | 23 |
| TB Control Note | 1 |
| **Grand Total** | **494** |

66.　　From July 17, 2018 to December 14, 2018, **for 150 days**, Plaintiff-Decedent

JANICE DOTSON-STEPHENS **refused meals at least 102 times**, with many of Defendant UHS'

charted notations referencing multiple meal trays. She started refusing fluids on October 12, 2018

and 12 times the nurses charted that she had access to water within her cell, **implying she could**

**drink from her sink if she wanted fluids.**

---

[27] Source: medical records received by Plaintiffs' counsel on April 23, 2019.

67.     From July 17, 2018 to December 14, 2018, for 150 days, **Defendant UHS'** doctors, nurses, and counselors charted Plaintiff-Decedent JANICE DOTSON-STEPHENS:[28]

- visits:  **56 times** in July, **104 times** in August, **100 times** in September, **92 times** in October, **90 times** in November, and **52 times** in December before her death (average over 3 times per day);

- had "auditory and visual hallucinations" **117 times** and that she continued to talk to herself and to people that were not there;

- doctors and nurses would "continue to monitor" her **304 times**, yet there was no record of substantive mental health treatment or intervention;

- refused medical care, day area access, showers, meals, and vital sign measurements, and exhibited daily indicators of schizophrenia, as documented through the **494 times** doctors, nurses, and counselors charted her medical records;

- had schizoaffective disorder **174 times** in her medical charts and died as a result of "atherosclerotic cardiovascular disease (an enlarged heart with narrowing of the vessels)" with schizoaffective disorder as a contributing factor;

- had a history of hypertension/HTN and was noncompliant with any medical staff and refused medication; and

- was not given any medications to treat her mental illness or hypertension. (According to the medical records provided by Defendant UHS, the "Patient Visit Report" summary is entirely blank for her "Medication Administration Record.")

68.     On December 14, 2018, Plaintiff-Decedent JANICE DOTSON-STEPHENS died after spending **150 continuous days confined in the Bexar County Jail DCHS infirmary**. Her chart history from December 14, 2018, the day she died, stated, "*61 y.o. female with history of schizoaffective, HTN. Noncompliant with any medical or mental health intervention/medications since arrival to Bexar County jail in July 2018.*"[29]

69.     On or about July 17, 2018, and at all times relevant through December 14, 2018, Defendants BEXAR COUNTY, Sheriff JAVIER SALAZAR, UHS, and UHS Director JESSICA C. YAO failed to keep Plaintiff-Decedent JANICE DOTSON-STEPHENS safe and free from physical and psychological injury, harm, and death.

---

[28] Source: medical records received by Plaintiffs' counsel on April 23, 2019 and Autopsy Report [Plaintiffs' Complaint Exhibit 13].
[29] Source: medical records received by Plaintiffs' counsel on April 23, 2019.

## CLAIMS

## COUNT I - VIOLATIONS OF 42 U.S.C. § 1983 FOR DEPRIVATION OF CIVIL RIGHTS UNDER THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THE FOURTEENTH AMENDMENT

70.     As a direct and proximate result of the foregoing facts, all named Defendants acted contrary to law and unreasonably deprived Plaintiff-Decedent JANICE DOTSON-STEPHENS of her privileges and immunities guaranteed by the Due Process and Equal Protection Clauses under the Fourteenth Amendment, as well as her rights under the Texas Constitution, in a willful and wanton fashion and they were deliberately indifferent. Because of their indifference, they caused her to suffer immeasurable injury and death, which caused the general damages requested by Plaintiffs in an amount not in excess of the applicable jurisdictional limit, to be proven at trial.

71.     Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, *subjects, or causes to be subjected*, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, **shall be liable to the party injured** in an action at law, suit in equity, or other proper proceeding for redress."

72.     The Fifth Circuit has explained that deliberate indifference means that "**it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights**."[30] Plaintiffs assert that all Defendants either deliberately ignored existing policies or they did not adopt policies required by Texas law to protect Plaintiff-Decedent JANICE DOTSON-STEPHENS while she was incarcerated in the Bexar County Jail, thereby creating *de facto* policies through customs of ignoring the law.  Defendants' deliberate indifference to the serious medical needs of its detainees in the jail, like Plaintiff-Decedent JANICE DOTSON-STEPHENS, caused her to needlessly suffer and die. The Fifth Circuit has consistently held that **municipal entities and local governing bodies do not enjoy immunity from suit, either absolute or qualified,**

---

[30] *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992) (emphasis added).

under a civil action for deprivation of rights.[31]

**A. DEFENDANTS BEXAR COUNTY, SHERIFF JAVIER SALAZAR, AND MIKE LO-ZITO VIOLATED PLAINTIFF-DECEDENT JANICE DOTSON-STEPHENS'** *FUNDA-MENTAL RIGHT TO PRETRIAL LIBERTY* **BY KEEPING HER IN JAIL SOLELY BE-CAUSE** *SHE COULD NOT AFFORD TO PAY BAIL.*

73.     The Fourteenth Amendment's Equal Protection and Due Process Clauses prohibit jailing a person because of her inability to make a monetary payment. Additionally, The Texas constitution protects criminal defendants against unreasonable bail, specifically, "[a]ll prisoners shall be bailable by sufficient sureties, unless for capital offenses."[32] Defendants violated Plaintiff-Decedent's fundamental right to pretrial liberty by keeping her in jail because she could not afford to pay bail without any inquiry into her ability to pay.[33]

74.     Here, Plaintiff-Decedent's bail experience through Bexar County was similar to Harris County bail practices, where the Fifth Circuit found in the seminal *ODonnell v. Harris County* case that despite their "formal requirements, in practice, county procedures were dictated by an **unwritten custom and practice that was marred by gross inefficiencies, did not achieve any individualized assessment in setting bail, and was incompetent to do so**."[34] The Fifth Circuit concluded that "[t]he incarceration of those who cannot [pay money bail], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements" and that "**because indigent misdemeanor arrestees were unable to pay secured bail, which, inter alia, resulted in a deprivation of their most basic liberty interests**."[35] The Court emphasized this point stating, "when the accused is indigent, setting a secured bail will, in most cases, have the same effect as a detention order. Accordingly, such decisions must reflect a careful weighing of the individualized factors set forth by both the state Code of Criminal Procedure and Local

---

[31] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466-67 (5th Cir. 1999) citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993) (emphasis added).
[32] Tex. Const. Art. I § 11
[33] *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018).
[34] *Id* (emphasis added).
[35] *Id*. citing *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (en banc) (emphasis added).

Rules."[36]

75.     Similar to Harris County, Bexar County's bail-setting procedures violate the equal protection clause of the Fourteenth Amendment because they **treat otherwise similarly situated misdemeanor arrestees differently based solely on their relative wealth**.[37] The *ODonnell* court put forth a practical summation of comparing similarly situated detainees:

> In sum, the essence of the district court's equal protection analysis can be boiled down to the following:  take two misdemeanor arrestees who are identical in every way—same charge, same criminal backgrounds, same circumstances, etc.—except that one is wealthy and one is indigent. Applying the County's current custom and practice, with their lack of individualized assessment and mechanical application of the secured bail schedule, both arrestees would almost certainly receive identical secured bail amounts. One arrestee is able to post bond, and the other is not. As a result, the wealthy arrestee is less likely to plead guilty, more likely to receive a shorter sentence or be acquitted, and less likely to bear the social costs of incarceration. The poor arrestee, by contrast, must bear the brunt of all of these, simply because she has less money than his wealthy counterpart.[38]

The *ODonnell* court held that this violates the equal protection clause[39] [Plaintiffs' Complaint Exhibit 11].

76.     The Fifth Circuit court further acknowledged in *ODonnell* that the cited Supreme Court cases applied to indigents who were already found guilty. But the Fifth Circuit court in *Rainwater* concluded that the distinction between post-conviction detention targeting indigents and pretrial detention targeting indigents is one without a difference.[40] They found that, regardless of its timing, "**imprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible**."[41] The Fifth Circuit held in 1971 that the pretrial detainment of "unconvicted misdemeanants" was a "[p]unitive measure [… ] out of harmony with the presumption of innocence."[42]

---

[36] *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018) at 158.
[37] *Id* (emphasis added).
[38] *Id*.
[39] *Id*.
[40] *Id*.
[41] *Id*. citing *Rainwater*, 572 F.2d at 1056 (citing *Williams and Tate*) (emphasis added).
[42] *Anderson v. Nosser*, 438 F.2d 183, 190 (5th Cir. 1971).

77.     In Bexar County, it appears there is no standard bond schedule and bonds are assigned on an arbitrary basis, even though Bexar County Pretrial Services has policies and procedures in place to protect mentally ill and/or indigent arrestees. The circumstances of Plaintiff-Decedent JANICE DOTSON-STEPHENS' arrest, magistration, and pretrial incarceration for over five months run extremely similar to the issues the court found so repugnant about the Harris County bail system in *ODonnell*.

78.     In the aftermath of Plaintiff-Decedent JANICE DOTSON-STEPHENS' death on December 14, 2018 and the lawsuit being filed December 21, 2018, it appears Defendants BEXAR COUNTY, Sheriff JAVIER SALAZAR, and Officer MIKE LOZITO with Bexar County Pretrial Services have done nothing to mitigate the multiple failures of their system. On April 18, 2019, Jack Michael Ule, suffering from mental illness, died while in jail for a nonviolent misdemeanor because he could not afford nominal bond, in his case $500. According to an article on May 4, 2019, the *San Antonio Express-News* likened his death to Plaintiff-Decedent JANICE DOTSON-STEPHENS [Plaintiffs' Complaint Exhibit 14]:

> Tragically, this is all too familiar. The deaths were four months apart. The contours of Ule's death on April 18 mirror the December death of JANICE DOTSON-STEPHENS, another inmate in the Bexar County Jail. Both had schizophrenia diagnoses. Adults in their 60s, both were charged with criminal trespass and held on low bonds. For Ule, bond was $500. For Dotson-Stephens, it was $300. Neither received representation at their bail hearings, nor appropriate mental health treatment while languishing in jail. Their deaths were four months apart, but each is the same damning indictment of a broken system desperately in need of the very reforms Bexar County's judges continue to resist and reject. If Bexar County's judges had embraced bail reform for nonviolent misdemeanors, Ule would never have died in jail. If Bexar County's judges truly embraced public defender representation for all defendants at bail hearings, Ule's mental health issues may have been flagged, and again, he may never have ended up in jail. In jail, Ule joined a cadre of people charged with criminal trespass who couldn't make nominal bonds. According to data from the Bexar County Sheriff's Office, the week Ule died, 54 people were in jail for criminal trespass. Their bonds ranged from $100 to $2,000.[43]

---

[43] https://www.mysanantonio.com/opinion/editorials/article/Another-avoidable-tragedy-in-the-Bexar-County-jail-13818158.php

79.     This all too familiar tragedy demonstrates once again that Defendants BEXAR COUNTY, Sheriff JAVIER SALAZAR, and MIKE LOZITO have a *de facto* **policy and practice of unconstitutionally incarcerating indigent, mentally ill arrestees**.

80.     These cases clearly demonstrate that Plaintiff-Decedent JANICE DOTSON-STE-PHENS' fundamental right to pretrial liberty was violated by keeping her in jail solely because she could not afford to pay bail, without providing any inquiry into or findings concerning her ability to pay. Unfortunately for Plaintiff-Decedent JANICE DOTSON-STEPHENS, **she was presumed indigent, and her ongoing, untreated mental illness was exacerbated by her extended incarceration** [Plaintiffs' Complaint Exhibit 10].

81.     Plaintiff-Decedent JANICE DOTSON-STEPHENS present claims do not run afoul of *ODonnell*. Because all named Defendants ignored mandatory procedures and Texas law, they are responsible for the violations of her constitutional rights. The Fifth Circuit has consistently held that **municipal entities and local governing bodies do not enjoy immunity from suit, either absolute or qualified, under a civil action for deprivation of rights**.[44]

## B. DEFENDANTS BEXAR COUNTY, SHERIFF JAVIER SALAZAR, AND MIKE LO-ZITO VIOLATED PLAINTIFF-DECEDENT'S *FUNDAMENTAL RIGHT TO PRETRIAL LIBERTY* BECAUSE OF HER *PROLONGED AND UNCONSTITUTIONAL DETENTION.*

82.     The Texas Constitution guarantees the rights of the accused in criminal prosecutions including, "no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary."[45] Additionally, Art. I, § 10 was designed to prevent oppressive pretrial incarceration, minimize the anxiety and concern of an accused, and limit the possibility that a defense will be impaired.[46]

---

[44] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466-67 (5th Cir. 1999) citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993) (emphasis added).
[45] Tex. Const. Art. I § 10
[46] *Comeaux v. State*, 413 S.W.3d 176 (Tex. App.—Beaumont 2013).

83.     Courts have tended to construe an "**oppressive pretrial incarceration**" as a period of one year or more; however, here Plaintiff-Decedent JANICE DOTSON-STEPHENS was a pretrial detainee, suffering from known mental illness, did not have the ability to pay $300 bail for over five months, and subsequently died while awaiting a court-ordered psychological evaluation … simply for an allegation of criminal trespass onto private property, a class B misdemeanor (punishable under Texas law by a fine not to exceed $2,000, a maximum of six (6) months in jail, or both such fine and confinement).[47]

84.     In 2017, the Fifth Circuit in *Jauch v. Choctaw Cnty.* analyzed due process violations and fundamental unfairness issues because of arbitrary government actions in pretrial detainee prolonged detentions.[48] As with *Jauch*, Plaintiff-Decedent JANICE DOTSON-STEPHENS' right to procedural due process was directly impacted in that the Court stated **prolonged-detention cases rise to the level of a violation of a "protected interest-life, liberty, or property**."[49]

85.     As in *Jauch*, Defendant Sheriff Salazar is responsible for those incarcerated at his jail. In fact, **Texas statutes clearly place the responsibility with the sheriff by law**.[50] The *Jauch* court did not allow the sheriff therein to escape liability because as they explained, "Sheriff Halford is responsible for those incarcerated in his jail, Miss. Code Ann. § 19-25-69, and the capias did not require him to impose the unconstitutional detention policy. Moreover, in an analogous context, the Supreme Court of Mississippi has made clear the responsibility of county sheriffs to hold detainees in a manner consistent with their oaths to uphold the federal and state constitutions … "[51]

86.     Additionally, Defendants BEXAR COUNTY, Sheriff JAVIER SALAZAR, and MIKE LOZITO violated multiple sections of Article 17.032 of the Texas Code of Criminal

---

[47] Tex. Penal Code § 12.22
[48] *Jauch v. Choctaw Cnty.*, 874 F.3d 425 (5th Cir. 2017).
[49] *Id*. citing *Augustine v. Doe*, 740 F.2d 322, 327 (5th Cir. 1984).
[50] The Sheriff is responsible for those incarcerated at his jail and is "the keeper of the county jail," "shall safely keep all prisoners committed to the jail," and "shall continue to exercise supervision and control over the jail." Tex. Local Gov't Code § 351.041. The Sheriff of a county serves as the jail administrator any time there is a not a person available who satisfies the examination requirements set forth in Tex. Gov't Code § 511.00905 and "if there is a vacancy … the sheriff shall serve as administrator of the jail until a new administrator is appointed and assumes the position." Tex. Local Gov't Code § 351.034(d).
[51] *Jauch v. Choctaw Cnty.*, 874 F.3d 425 (5th Cir. 2017).

Procedure, "**Release on personal bond of certain defendants with mental illness or intellectual disability**" by not releasing Plaintiff-Decedent JANICE DOTSON-STEPHENS on personal bond or requiring her to submit to outpatient or inpatient mental health treatment **as required**.[52]

87.     Plaintiffs assert that the totality of the circumstances here are sufficient to show Defendants denied Plaintiff-Decedent JANICE DOTSON-STEPHENS her fundamental right to liberty due to the fact she could not rationally assert her rights because of her mental illness. Defendants should have immediately investigated, evaluated, appointed counsel, and potentially released her in accordance with Texas law.

88.     Because of the Defendants' failures, Plaintiffs and Plaintiff-Decedent suffered unnecessarily through her prolonged incarceration and subsequent death. Had Defendants complied with mandatory departmental policies and procedures, regulations, and Texas law,[53] they would have identified Plaintiff-Decedent's history of mental illness and presumably sought the physical and mental health treatment she desperately needed.

89.     The right at issue here was clearly established and its contours "sufficiently clear" that any reasonable official would understand that the Constitution forbids confining criminal defendants for a prolonged period (five months in this case) prior to bringing them before a judge.[54] The Fifth Circuit has consistently held that **municipal entities and local governing bodies do not enjoy immunity from suit, either absolute or qualified, under a civil action for deprivation of rights**.[55]

## COUNT II - UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT (42 U.S.C. § 1983)

90.     This Court discussed at length the bifurcation of constitutional claims for pretrial

---

[52] Tex. Code Crim. Proc. Art. 17.032(b-c)
[53] *See* Tex. Local Gov't Code § 351.041, Tex. Gov't Code § 511.00905, § 511.009(a)(23)(A-B), Tex. Admin. Code, tit. 37, § 273.5, § 267.1(b)(3), § 273.4(a), § 273.5(a)(1), § 273.5(a)(5), § 275.1, § 275.2, § 275.7, § 285.1, Tex. Code Crim. Proc. Art. 16.21, Art. 16.22, Art. 16.23, and Art. 17.032.
[54] *Id*. discussing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039 (1987)." (p. 16-17).
[55] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466-67 (5th Cir. 1999) citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993) (emphasis added).

detainees in *Rodriguez v. Bexar Cnty*.[56] "Courts considering constitutional challenges by pretrial detainees must begin by deciding whether to classify the challenge as an attack on a condition of confinement or an episodic act or omission."[57]

91.     This Court explained in the *Rodriguez* opinion that a "challenge to a condition of confinement" is "a challenge to general conditions, practices, rules, or restrictions of pretrial confinement, and the constitutional issue is whether the condition is reasonably related to a legitimate governmental objective."[58] Additionally, *Rodriguez* clarifies that "a plaintiff may assert a conditions-of-confinement claim based on injuries suffered as a result of not receiving proper medical attention if the plaintiff does not implicate the acts or omissions of individuals but rather the jail's system of providing medical care to inmates."[59]

## A. DEFENDANTS BEXAR COUNTY, SHERIFF JAVIER SALAZAR, UHS, AND UHS DIRECTOR JESSICA C. YAO VIOLATED PLAINTIFF-DECEDENT JANICE DOTSON-STEPHENS' FOURTEENTH AMENDMENT *RIGHT TO MEDICAL CARE* WHILE SHE WAS DETAINED AT BEXAR COUNTY JAIL.

92.     "When a county takes custody of a prisoner, *it must provide health care for the prisoner*," per TEX. CODE CRIM. P. art. 16.21; see also 37 TEX. ADMIN. CODE § 273 (Texas Commission on Jail Standards, Health Services).[60] The United States Supreme Court has held that a governmental entity's duty to provide medical care to inmates is constitutionally mandated. *West v. Atkins*, 487 U.S. 42, 56, 108 S. Ct. 2250, 2259, 101 L. Ed. 2d 40 (1988).[61]

93.     A pretrial detainee who has not been convicted of a crime has a right under the Fourteenth Amendment to the United States Constitution to be protected from impermissible punishment, like the denial of or delay in providing necessary medical care. According to the *Fifth*

---

[56] *Rodriguez v. Bexar Cnty.*, 2018 U.S. Dist. LEXIS 157585 (W.D. Tex. September 17, 2018) citing *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999).
[57] *Id*.
[58] *Id*. discussing *Estate of Henson v. Wichita Cnty.*, Tex., 795 F.3d 456, 462 (5th Cir. 2015).
[59] *Id*. discussing *Estate of Henson v. Wichita Cnty.*, 795 F.3d at 463; *see also Montano v. Orange County*, 842 F.3d 865 (5th Cir. 2016).
[60] *Thomas v. Harris County*, 30 S.W.3d 51, 57 (Tex. App.—Houston [1st Dist.] 2000) (emphasis added).
[61] *Id*. discussing *West v. Atkins*, 487 U.S. 42, 56, 108 S. Ct. 2250, 2259, 101 L. Ed. 2d 40 (1988).

*Circuit Pattern Jury Charges*, Plaintiffs must prove the constitutional violation occurred due to the existence of an identifiable or intended condition, policy, or practice of inadequate medical care and that the condition, policy, or practice was not reasonably related to a legitimate governmental objective.[62]

94.     The Fifth Circuit recognizes that a condition usually results from an explicit policy or restriction, but a pattern may demonstrate an unstated or *de facto* policy.[63] This Court supported this in the *Rodriguez* opinion in that "[i]n some cases, a condition may reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions **sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice**."[64]

95.     Here, the incredible number of times the 32 doctors, nurses, and counselors at UHS recognized Plaintiff-Decedent JANICE DOTSON-STEPHENS' constant presentation of mental illness, **yet simply documented her chart as some sort of "check-the-box" formality, demonstrates a pervasive system-wide policy**. Not only did those 32 UHS doctors, nurses, and counselors ignore her symptoms on a daily basis, they deliberately turned a blind-eye to her suffering. The fact that she **refused meals and liquids at least 102 times and lost 136 pounds in five months**—essentially starving herself—is not only evidence of deliberate indifference, it is "**repugnant to the conscience of mankind**" (to use a phrase the Supreme Court used frequently when analyzing Eighth and Fourteenth Amendment claims).

96.     The indifference shown by not treating her, medicating her, nor attempting to have her transferred to the State Hospital—as had been done so many times in the past—is evidence in itself that the level of medical care provided generally by UHS Correctional Health Care Services at the Bexar County Jail and UHS Director JESSICA C. YAO was so inadequate that it resulted

---

[62] *PATTERN JURY INSTRUCTIONS (Civil Cases)* Prepared by the Committee on Pattern Jury Instructions District Judges Association Fifth Circuit 2014 with revisions through October 2016 citing *Shepherd v. Dallas County*, 591 F.3d at 455 (approving jury charge).
[63] *Id*.
[64] *Rodriguez v. Bexar Cnty.*, 2018 U.S. Dist. LEXIS 157585 (W.D. Tex. September 17, 2018) citing *Shepherd*, 591 F.3d at 452 (emphasis added).

in a serious deprivation of Plaintiff-Decedent's basic human needs, and that the lack of care provided was not reasonably related to a legitimate governmental objective.[65]

97.    The Fifth Circuit recites in its *Pattern Jury Charges* that "pretrial detainees may not be entitled to the best medical care available or to the level of medical care that may be available to persons who are not detained or incarcerated, but *a* **facility must provide for a detainee's basic human needs**."[66] In a general context, "basic human needs" could be understood as food and shelter, but as discussed herein, Texas law clearly required Defendants to provide Plaintiff-Decedent JANICE DOTSON-STEPHENS with much more care. Defendants BEXAR COUNTY, Sheriff JAVIER SALAZAR, UHS, and UHS Director JESSICA C. YAO did not meet a basic duty to provide her "basic human needs" because they allowed a mentally unstable detainee to refuse food and water without intervention for 150 days. The Fifth Circuit has consistently held that **municipal entities and local governing bodies do not enjoy immunity from suit, either absolute or qualified, under a civil action for deprivation of rights.**[67]

## B. DEFENDANTS BEXAR COUNTY, SHERIFF JAVIER SALAZAR, UHS, AND UHS DIRECTOR JESSICA C. YAO VIOLATED PLAINTIFF-DECEDENT'S *FUNDAMENTAL CONSTITUTIONAL RIGHT TO BE PROTECTED FROM CRUEL AND UNUSUAL PUNISHMENT*.

98.    The Due Process Clause accords pretrial detainees rights not enjoyed by convicted inmates under the Eighth Amendment to the United States Constitution prohibition against cruel and unusual punishment.[68] A **pretrial detainee is entitled to greater rights** than those afforded convicted prisoners.[69] Specifically, "although convicted prisoners have only an Eighth Amendment right to be free from 'cruel and unusual' punishment, a pretrial detainee has a Fourteenth

---

[65] *Shepherd*, 591 F.3d at 455; see also *Shepherd*, 591 F.3d at 452 (citing *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)).

[66] *PATTERN JURY INSTRUCTIONS (Civil Cases)* Prepared by the Committee on Pattern Jury Instructions District Judges Association Fifth Circuit 2014 with revisions through October 2016 citing *Shepherd v. Dallas County*, 591 F.3d at 453-54 (emphasis added).

[67] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466-67 (5th Cir. 1999) citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993) (emphasis added).

[68] *Colle v. Brazos Cnty.*, 981 F.2d 237, 239 (5th Cir. 1993).

[69] *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979) (emphasis added).

Amendment Due Process **right to be free from any type of punishment.**"[70] Thus, the inadequate medical care of pretrial detainees falls within the broad scope of reasonable medical care and is actionable under 42 U.S.C.S. § 1983.[71] In *West*, a case involving civil liability under 42 U.S.C. § 1983, the Supreme Court interpreted the Cruel and Unusual Punishment Clause of the Eighth Amendment to impose a duty on prisons to provide medical care for inmates.[72]

99.     These elementary principles establish the government's obligation to provide medical care for those persons it is punishing by incarceration.[73] An inmate must rely on prison authorities to treat their medical needs; if the authorities fail to do so, those needs will not be met.[74] "In the worst cases, such a failure may actually produce physical 'torture or a lingering death,' *in re Kemmler*, *supra*, the evils of most immediate concern to the drafters of the Amendment."[75] "In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose."[76] The infliction of such unnecessary suffering is inconsistent with the standards of decency expressed in modern legislation that "**it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.**"[77]

100.     The pain and suffering endured by Plaintiff-Decedent JANICE DOTSON-STEPHENS through her prolonged, unnecessary detention for over five months amounted to extremely cruel and unusual punishment prohibited under the Fourteenth Amendment, thus violating 42 U.S.C. § 1983. The 32 doctors, nurses, and counselors at UHS ignored Plaintiff-Decedent JANICE DOTSON-STEPHENS' constant presentation of mental illness and they deliberately turned a

---

[70] *Simmons v. Hays Cnty. Sheriff's Dep*'t, No. A-11-CV-343-LY, 2012 U.S. Dist. LEXIS 200021, at *20 (W.D. Tex. 2012); *Colle v. Brazos Cnty.*, 981 F.2d 237, 244 (5th Cir. 1993) ("A pretrial detainee . . . has a Fourteenth Amendment Due Process right to be free from punishment altogether.") (emphasis added).
[71] *Id*.
[72] *Id*.
[73] *PATTERN JURY INSTRUCTIONS (Civil Cases)* Prepared by the Committee on Pattern Jury Instructions District Judges Association Fifth Circuit 2014 with revisions through October 2016.
[74] *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290 (1976).
[75] *Id*. at 290.
[76] *Id*. Cf. *Gregg v. Georgia*, *supra*, at 182-183 (joint opinion).
[77] *Id*. at 290-91 (emphasis added).

blind-eye to her suffering for 150 days. The fact that she **refused meals and liquids at least 102 times and lost 136 pounds in five months—essentially starving herself—c**aused her to languish and suffer alone in a Bexar County Jail infirmary cell. Additionally, the numerous times Bexar County detention officers disregarded her refusal of water and liquids and stating that she could drink from her cell sink is undeniably cruel.

101.    The indifference shown by not treating her, medicating her, or attempting to have her transferred to the State Hospital—as had been done numerous times in the past—is evidence in itself that the level of medical care provided by UHS Correctional Health Care Services and UHS Director JESSICA C. YAO was so inadequate that it resulted in a serious deprivation of Plaintiff-Decedent JANICE DOTSON-STEPHENS' constitutional human rights and amounted to cruel and unusual punishment prohibited under the Eighth and Fourteenth Amendments.

**C. MULTIPLE FAILURES BY DEFENDANTS BEXAR COUNTY, SHERIFF JAVIER SALAZAR, UHS, AND UHS DIRECTOR JESSICA C. YAO TO MAINTAIN MINIMUM STANDARDS, ALONG WITH THE EVIDENCE OF INTENTIONAL NONCOMPLI-ANCE, DEMONSTRATE A PERVASIVE PATTERN AND PRACTICE OF *DERELIC-TION OF DUTY TO PROTECT AND KEEP DETAINEES SAFE* DURING THEIR INCAR-CERATION.**

102.    Under the conditions-of-confinement prong of the 42 U.S.C. § 1983 claim, Plain-tiffs claim the Defendants BEXAR COUNTY, Sheriff JAVIER SALAZAR, UHS, and UHS Di-rector JESSICA C. YAO by and through their employees and contractors, have a documented pattern and practice of noncompliance, thereby creating *de facto* policies of improperly protecting and caring for inmates with mental health issues putting them at substantial risk of serious harm. Under Tex. Code Crim. Proc. Art. 16.21, "**every sheriff shall keep safely a person committed to his custody**." Had Defendants followed documented policies and procedures under state and local law, Plaintiff-Decedent JANICE DOTSON-STEPHENS would have been treated substan-tially differently, likely would not have languished in jail for over five months, starving and un-medicated, and would have received the proper mental and physical care to which she was consti-tutionally entitled. But for their lack of compliance, Plaintiff-Decedent JANICE DOTSON-

STEPHENS would likely be alive today.

103.     Furthermore, from January 19, 2018 through February 22, 2019, Bexar County Jail had five (5) deaths, one (1) suicide, and four (4) escapes in a twelve (12) month inspection period [Plaintiffs' Complaint Exhibit 9]. These statistics along with the death of Jack Michael Ule in April 2019, support the claim that Defendants BEXAR COUNTY and Sheriff JAVIER SALAZAR have failed to follow Tex. Code Crim. Proc. Art. 16.21, specifying that "**every sheriff shall keep safely a person committed to his custody**."

104.     Statutory violations by Defendants BEXAR COUNTY, Sheriff JAVIER SALAZAR, UHS, and UHS Director JESSICA C. YAO supporting this claim include but are not limited to:

- Art. 16.21 of the Tex. Code Crim. Proc., "**every sheriff shall keep safely a person committed to his custody**;"

- Art. 16.22 of the Texas Code of Criminal Procedure, for "Early Identification of Defendant Suspected Having Mental Illness or Intellectual Disability" by failing to follow the mandatory procedures for magistration timeframes, prisoner access to mental health professionals, continuity of prescription medication requirements, mandatory training, and reporting requirements for mentally ill defendants ("**Not later than 12 hours after the sheriff or municipal jailer having custody of a defendant … reasonable cause to believe that the defendant has a mental illness or is a person with intellectual disability, the sheriff or municipal jailer shall provide written or electronic notice to the magistrate**." Art. 16.22(a)(3) – magistrate was required to order Dotson to submit to an examination within "**a reasonable period not to exceed 72 hours**");[78]

- Art. 16.23 of the Tex. Code Crim. Proc., "Diversion of Persons Suffering Mental Health Crisis or Substance Abuse Issue" by **failing to make a good faith effort to divert** Plaintiff-Decedent JANICE DOTSON-STEPHENS to a proper treatment center in the agency's jurisdiction **as required**;

- Tex. Local Gov't Code § 353.034, "County Jail Facilities" by **failing to provide adequate safety** of Plaintiff-Decedent JANICE DOTSON-STEPHENS **nor providing proper supervision and control over the jail** as required under § 351.041;

- Texas Senate Bill 1326 (effective September 1, 2017), "Reporting Requirements" by **failing to follow procedures regarding criminal defendants who are or may be persons with a mental illness or an intellectual disability** and by not obtaining a written assessment ordered by the magistrate and completed by the local MH/IDD authority or another qualified expert; and

---

[78] Tex. Code Crim. Proc. Art. 16.22(a)(1) (emphasis added)

- Defendants **failed to meet minimum statutory standards required** by the Texas Commission on Jail Standards and were cited for multiple violations of Tex. Admin. Code, Title 37.

105.    Additionally and specifically, the "Annual Report" for calendar year 2018 [Plaintiffs' Complaint Exhibit 9] found **multiple deficiencies** and Defendants were advised to "promptly initiate and complete appropriate corrective measures." These deficiencies included, but were not limited to, findings such as:

- "Inmate classification paperwork and staff interviews indicated that jail staff routinely exceed custody reassessments are required. One file exceeded the 90-day limit by 27 days."[79]

- "The administration has **employed and authorized civilian employees to perform duties of health personnel or trained book in officers which is a violation of minimum jail standards.**"[80]

- "Observation logs indicated that jail staff exceeded the required face-to-face 15-minute observations **on a continual basis** in accordance with the jails [sic] own approved operational plan."[81]

- "Observation logs indicated that jail staff exceeded the required face-to-face 60-minute observations **on a continual basis** by as few as 1 minute up to 126 minutes."[82]

- "The administration has employed and authorized civilian employees to perform duties of licensed jailers. These civilian employees are **not licensed as jailers** by TCOLE as required."[83]

- "The inspection team was unable to verify, through maintained documentation, that recreation is being offered to inmates at least 3 days per week for 1 hours **as required** by minimum jail standards."[84]

106.    In sum, the multiple failures (by all named Defendants responsible for the inmates and pretrial detainees at Bexar County Jail) to maintain minimum standards, along with the evidence of intentional noncompliance, demonstrate a **pervasive pattern and practice of dereliction of duty to protect and keep detainees safe during their incarceration**. More disturbing and

---

[79] 37 Tex. Admin. Code § 267.1(b)(3)
[80] 37 Tex. Admin. Code § 273.4(a) (emphasis added)
[81] 37 Tex. Admin. Code § 273.5(a)(5)
[82] 37 Tex. Admin. Code § 275.1
[83] 37 Tex. Admin. Code § 275.2 & § 275.7
[84] 37 Tex. Admin. Code § 285.1

relevant to the issues in this case is the blatant disregard for the policies and procedures required for mental health by the jail through:

1. lack of training,
2. lack of reassessing inmate classification,
3. employing unlicensed civilian employees over critical screening intake areas, and
4. intentional circumvention of systems by employees to skip areas of required fields in the grievance tracking system [Plaintiffs' Complaint Exhibit 9].

## C. DEFENDANTS BEXAR COUNTY, SHERIFF JAVIER SALAZAR, UHS, AND UHS DIRECTOR JESSICA C. YAO VIOLATED PLAINTIFF-DECEDENT'S CONSTITUTIONAL RIGHTS BY *FAILING TO TRAIN AND/OR SUPERVISE THEIR SUBORDINATES*.

107.    As alleged in the facts above, the individually named and unnamed employees/officers/supervisors under Defendants' supervision violated Plaintiff-Decedent JANICE DOTSON-STEPHENS' constitutional rights. Defendants, acting with deliberate indifference, failed to follow the law as outlined above, failed to train and/or supervise their subordinates, and those failures caused the violation of the Plaintiff-Decedent's rights.[85]

108.    All named Defendants failed to follow § 273.5 of the Texas Administrative Code, "Mental Disabilities/Suicide Prevention Plan" (adopted to be effective December 20, 1994, last revision 2018) requiring staff training, creating and following **procedures for intake screening to identify mental illness** (in compliance with Tex. Code Crim. Proc. Art. 16.22), **adequately providing for supervision**, and **verifying Plaintiff-Decedent JANICE DOTSON-STEPHENS had previously received mental healthcare at intake as required**.

109.    Specifically, an example of failing to train is found in the "Annual Report" for calendar year 2018 [Plaintiffs' Complaint Exhibit 9], which found multiple deficiencies. Defendants were advised to "**promptly initiate and complete appropriate corrective measures**." These deficiencies included, but were not limited to, findings such as: "**the administration was unable to provide training records to confirm that detention officers received suicide prevention**

---

[85] *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (citing *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).

training in accordance with the approved operational plans."[86]

110.    Furthermore, by failing to train, Defendants BEXAR COUNTY, Sheriff JAVIER SALAZAR, UHS, and UHS Director JESSICA C. YAO knew or should have known that a particular omission in the training program would cause employees to violate the constitutional rights of members of the public they encounter, but Defendants nevertheless chose to ignore the numerous training programs designed to protect Plaintiff-Decedent JANICE DOTSON-STEPHENS and potentially other similarly situated arrestees and pretrial detainees.

## COUNT III - UNCONSTITUTIONAL EPISODIC ACTS AND OMISSIONS (42 U.S.C. § 1983)

111.    An episodic-acts-or-omissions claim, in contrast to a "conditions-of-confinement" claim, faults specific officials for their acts or omissions.[87] Here, because the individually named Defendants, Sheriff JAVIER SALAZAR, Officer MICHAEL KOHLLEPPEL, and Director MIKE LOZITO, **acted with deliberate indifference and because there was a pattern and practice of indifference** to Plaintiff-Decedent JANICE DOTSON-STEPHENS' constitutional rights, **the Defendant entities are also liable for the § 1983 violations**.[88] According to this Court, the relevant question for a viable episodic-acts-and-omissions claim is "whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge."[89] Further, to restate the Fifth Circuit's explanation of deliberate indifference, "it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights."[90]

112.    When an official has "subjective knowledge of a substantial risk of serious harm" to the detainee and responds to that risk with deliberate indifference, a pretrial detainee's constitutional rights are violated.[91] This Court stated in *Rodriguez*, "[i]n other words, the official must

---

[86] 37 Tex. Admin. Code § 273.5(a)(1) (emphasis added)
[87] *Rodriguez v. Bexar Cnty.*, 2018 U.S. Dist. LEXIS 157585 (W.D. Tex. September 17, 2018) discussing *Estate of Henson v. Wichita Cnty.*, Tex., 795 F.3d 456, 462 (5th Cir. 2015).
[88] *See Id.* discussing *Sanchez v. Young Cnty.*, Tex., 866 F.3d 274, 279 (5th Cir. 2017) (emphasis added).
[89] *Id.* discussing *Estate of Henson v. Wichita Cnty.*, Tex., 795 F.3d 456, 462 (5th Cir. 2015) (quoting *Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996)).
[90] *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992).
[91] *See Id.* discussing *Estate of Henson*, 795 F.3d at 463.

know of and disregard an excessive risk to inmate health or safety."[92] **The multiple *per se* violations of Texas statutes as well as multiple examples of noncompliance with department and agency guidelines, demonstrate that individually named Defendants knew of the substantial risk of serious harm** to Plaintiff-Decedent JANICE DOTSON-STEPHENS, and likely other similarly situated detainees, and **chose to disregard that risk**, whether intentionally or through gross negligence.

113.    Here, Defendants Sheriff JAVIER SALAZAR and Director MIKE LOZITO violated multiple "General Duties" required under § 511.009 of the Texas Government Code, examples include failing to "report to the Texas Correctional Office on Offenders with Medical or Mental Impairments on a jail's compliance with Article 16.22, Code of Criminal Procedure,"[93] and failing to ensure the jail adopted "reasonable rules and procedures to ensure the safety of prisoners."[94] The Fifth Circuit has consistently held that **municipal entities and local governing bodies do not enjoy immunity from suit, either absolute or qualified, under a civil action for deprivation of rights**.[95]

## A. DEFENDANT SAN ANTONIO POLICE OFFICER KOHLLEPPEL HAD *KNOWLEDGE OF A RISK OF SERIOUS HARM* TO PLAINTIFF-DECEDENT BY *NOT FOLLOWING DEPARTMENTAL PROCEDURES AND CHOSE TO DISREGARD THAT RISK.*

114.    Defendant San Antonio Police Officer MICHAEL KOHLLEPPEL is not entitled to qualified immunity because, at the time of the multiple violations listed above, as a reasonable Officer/Official with the same information, he could not have believed that his actions were lawful. **Law enforcement officers and government officials are presumed to know the clearly established constitutional rights of individuals they encounter.**[96]

---

[92] *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992).
[93] 4 Tex. Gov't Code § 511.09(a)(17)
[94] 4 Tex. Gov't Code § 511.09(a)(23)(A)
[95] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466-67 (5th Cir. 1999) citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993) (emphasis added).
[96] *Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (emphasis added).

115.    From as early as July, 1996 through July, 2018, Plaintiff-Decedent JANICE DOT-SON-STEPHENS had an extensive police record with San Antonio Police Department prior to the arrest at issue, including at least three explicitly identified "mental health disturbance" situations, two of those requiring "emergency mental health detentions," one on March 18, 2014 and the other on September 1, 2017 [Plaintiffs' Complaint Exhibit 1]. Her documented mental health history spanning decades was readily accessible to all Defendants at arrest and throughout her time incarcerated at Bexar County Jail.

116.    Defendant San Antonio Police Officer MICHAEL KOHLLEPPEL was required to follow department guidelines created to protect mentally ill arrestees and he failed to do so. The San Antonio Police Department has clearly established policies in the "San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons*" setting forth policies **every police officer must abide by**. Here, the numerous failings by Officer MICHAEL KOHLLEPPEL demonstrate his deliberate indifference, which jeopardized Plaintiff-Decedent JANICE DOTSON-STEPHENS' constitutional rights and potential safety. Specifically, Officer MICHAEL KOHLLEPPEL failed to:

- "carefully evaluate individuals involved in a mental health crisis and determine the best course of action to take in order to resolve the situation" as required;[97]

- "recognize symptoms which may indicate the existence of mental illness" as required;[98]

- "determine the best course of action to be taken, including the need for Emergency Medical Services (EMS) or Warrantless Emergency Detention" as required;[99]

- follow the procedure whereby "any medication being taken by the individual should be transported with the individual and released to the appropriate medical or detention personnel (this shall be documented in the report)" as required;[100]

---

[97] San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons, §.02(B),* and GM Procedure 802, *Unusual Occurrences and Critical Incidents* [Plaintiffs' Complaint Exhibit 12].
[98] San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons, §.04(A)* [Plaintiffs' Complaint Exhibit 12].
[99] San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons, §.07(A)* [Plaintiffs' Complaint Exhibit 12].
[100] San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons, §.07(F)* [Plaintiffs' Complaint Exhibit 12].

- maintain a "close and constant visual observation of the person experiencing a mental health crisis situation" and interview Plaintiff-Decedent JANICE DOTSON-STEPHENS or any relatives, friends, neighbors, or other associated with the situation since she was experiencing a mental health crisis situation as required;[101]

- evaluate Plaintiff-Decedent JANICE DOTSON-STEPHENS for mental illness and the crisis situation and failed to follow any of the numerous options available to them;[102]

- detain Plaintiff-Decedent JANICE DOTSON-STEPHENS under a "Warrantless Emergency Detention" rather than arresting her under the SAPD department guidelines;[103]

- immediately notify Central Magistration personnel that Plaintiff-Decedent JANICE DOTSON-STEPHENS was suspected of mental illness, notate the magistrate's intake slip, and transport her medication with her to the jail;[104] and

- evaluate Plaintiff-Decedent JANICE DOTSON-STEPHENS for mental illness and the crisis, document and report findings and any actions taken in their respective reports, and then forward those reports to the Mental Health Detail.[105]

117.    Without discovery and copies of the Defendant Officer MICHAEL KOHLLEP-PEL's personnel file, it is unknown whether he attended and received the required training on handling mentally ill persons in accordance with the San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons, §.12* [Plaintiffs' Complaint Exhibit 12].

118.    Without discovery and training records from the City of San Antonio and San Antonio Police Department, it is unclear whether the city had an adequate training program in relation to the tasks officers must perform relative to mentally ill persons.[106] **The egregious and numerous failings on the part of the city and the officers** in handling the arrest of Plaintiff-Decedent JANICE DOTSON-STEPHENS, along with her subsequent extended incarceration leading to her death, implicates the entire San Antonio Police Department/City of San Antonio for the violations of her constitutional rights.

---

[101] San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons, §.07(G)(1-2)* [Plaintiffs' Complaint Exhibit 12].

[102] San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons, §.08 (Courses of Action)* [Plaintiffs' Complaint Exhibit 12].

[103] San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons, §.08(B-F)* [Plaintiffs' Complaint Exhibit 12].

[104] San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons, §.08(E)(2-4)* [Plaintiffs' Complaint Exhibit 12].

[105] San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons, §.09* [Plaintiffs' Complaint Exhibit 12].

[106] *Ramirez v. Escajeda*, 298 F. Supp. 3d 933 (W.D. Tex. 2018).

119.    In sum, the information and evidence obtained thus far demonstrate a series of either willful violations or deliberate indifference of the multiple laws and procedures in place that were enacted to protect Plaintiff-Defendant JANICE DOTSON-STEPHENS, as well as other potentially similarly situated pretrial detainees in Bexar County. **By simply adopting procedures to present a positive public image of care and concern for mentally ill defendants/detainees yet turning a blind eye to the pervasive willful violations by almost every employee/contractor and department involved in the arrest, intake, medical care, mental healthcare, and incarceration of detainees not only creates public distrust in the judicial system, the Bexar County Jail unconstitutionally deprived JANICE DOTSON-STEPHENS of her liberty and the ultimate consequence to her and her family were tragic and irreversible.**

## COUNT IV – DISCRIMINATION BY DEFENDANTS BEXAR COUNTY, UNIVERSITY HOSPITAL SERVICES, AND CITY OF SAN ANTONIO UNDER THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT

120.    The Americans with Disabilities Act (ADA) defines psychiatric disability as a "mental impairment that substantially limits one or more of the major life activities of [an] individual; a record of impairment; or being regarded as having such an impairment.[107]  Both the ADA and the Rehabilitation Act require public entities—or private entities receiving federal funding—to provide reasonable accommodations to assist disabled person in accessing public programs and services.[108] "Although units of local governments, such as cities and counties, are "state actors" for purposes of Federal Constitution's Fourteenth Amendment, Constitution's Eleventh Amendment does not extend its state immunity from suit by private individuals in federal court to units of local government; these entities are subject to private claims for damages under Americans with Disabilities Act (42 USCS § 12101 et seq.) without Congress' ever having to rely on § 5 of Fourteenth

---

[107] 42 U.S.C. § 12102(2) (1994).
[108] *Borum v. Swisher Cnty.*, No. 2:14-CV-127-J, 2014 U.S. Dist. LEXIS 140321, at 20 (N.D. Tex. 2014) discussing 42 U.S.C. § 12112(b)(5)(A); *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011).

Amendment to render them so."[109] "The Rehabilitation Act, 29 U.S.C.S. § 701 et seq., is operationally identical to the Americans with Disabilities Act (ADA), 42 U.S.C.S. § 12101 et seq., in that both statutes prohibit discrimination against disabled persons; however, the ADA applies only to public entities while the Rehabilitation Act applies to any federally funded programs and activities, whether public or private."[110] Plaintiffs request this Court to review claim against Defendants BEXAR COUNTY, UHS, and the CITY OF SAN ANTONIO similarly.

121.    Here, Defendants BEXAR COUNTY, UHS, and the CITY OF SAN ANTONIO qualify as entities that must abide by the ADA and Rehabilitation Act and were required to reasonably accommodate Plaintiff-Decedent JANICE DOTSON-STEVENS due to her known mental disability, specifically, schizoaffective disorder. Isolating her in a jail cell in the infirmary for over five months, not medicating her as had been done so many times in the past for her hypertension and schizoaffective disorder, and not intervening when she refused meals and liquids over 100 times runs contrary to the purpose of the act where Congress found that, "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem."[111]

122.    "Establishing a prima facie case of discrimination under the ADA requires the plaintiff to prove (1) that he is a qualified individual under the ADA/Rehabilitation Act; (2) that he is being excluded from participation in, or is being denied benefits, services, programs, or other activities for which a public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability."[112]

---

[109] *Board of Trustees v. Garrett,* 531 U.S. 356, 121 S. Ct. 955, 148 L. Ed. 2d 866, 2001 U.S. LEXIS 1700, 69 U.S.L.W. 4105, 2001 Cal. Daily Op. Service 1471, 2001 Daily Journal DAR 1857, 11 Am. Disabilities Cas. (BNA) 737, 2001 Colo. J. C.A.R. 968, 14 Fla. L. Weekly Fed. S 92.
[110] *Borum v. Swisher Cnty.,* No. 2:14-CV-127-J, 2014 U.S. Dist. LEXIS 140321, at 1 (N.D. Tex. 2014).
[111] 42 U.S.C. § 12102(a)(2) (1994).
[112] *Borum v. Swisher Cnty.,* No. 2:14-CV-127-J, 2014 U.S. Dist. LEXIS 140321, at 20 (N.D. Tex. 2014) discussing *Melton v. Dall. Area Rapid Transit,* 391 F.3d 669, 671-72 (5th Cir. 2004).

123.    The first prong of the test is easily met because (1) Plaintiff-Decedent JANICE DOTSON-STEPHENS received Social Security Disability Benefits for her mental condition and the initial screening performed by Defendant UHS at booking stated, "**per chart patient has a hx of schizophrenia**" and "**found in 2010 incompetent for agg. assault charge**;"[113] therefore, it was well-known and easily identifiable that she was a qualified individual on that basis alone.

124.    The second prong of the test is equally clear in that, "(2) prison *medical* care is a program or service for which a public entity is responsible."[114]

125.    Although there is disagreement among the circuit courts as to the whether courts should use the definition of *intentional discrimination* or *deliberate indifference* standard to inter-pret the third prong of the test, the Fifth Circuit has "made it clear that a defendant's failure to make reasonable accommodations to the needs of disabled persons can constitute intentional discrimi-nation under the ADA and the Rehabilitation Act.[115] ADA claims have been extended to the prison context, where "failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against [a] prisoner because the lack of an accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prison-ers."[116] Irrespective of which standard the Court chooses to apply here, Defendants BEXAR COUNTY, UHS, and the CITY OF SAN ANTONIO discriminated against Plaintiff-Decedent JANICE DOTSON-STEPHENS because of her inability to pay bail for release in conjunction with her mental illness disability which lead to her death.

126.    The facts and claims alleged herein support the claims for intentional discrimina-tion by Defendants BEXAR COUNTY, UHS, and the CITY OF SAN ANTONIO under the ADA and Rehabilitation Act because Plaintiff-Decedent JANICE DOTSON-STEPHENS suffered more

---

[113] Source: medical records received by Plaintiffs' counsel on April 23, 2019.
[114] *Borum v. Swisher Cnty.*, No. 2:14-CV-127-J, 2014 U.S. Dist. LEXIS 140321, at 21 (N.D. Tex. 2014).
[115] *Id*. at 24 (N.D. Tex. 2014) discussing *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004); *see also Tennessee v. Lane*, 541 U.S. 509, 531, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004) (noting that Congress recognized "that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion").
[116] *Id*. at 25 (N.D. Tex. 2014) discussing *McCoy v. Tex. Dep't of Criminal Justice*, C.A. No. C-05-370, 2006 U.S. Dist. LEXIS 55403, 2006 WL 2331055, at *7 (S.D. Tex. Aug. 9, 2006).

pain and punishment than a non-disabled pretrial detainee.[117] One of the doctors, Cesar A. Garcia (MD) with Defendant UHS, charted on July 23, 2018 in one of the many "Psych Progress Notes" that she was "**vile**." The most egregious examples of her suffering at the hands of Defendants, in violation of both Acts, are her extreme weight loss—**136 pounds in 150 days**—and the fact that Defendants continually observed her crisis episodes, such as her numerous hallucinations and outbursts, but rather than treating her with anti-psychotic medications or transferring her to the State Hospital, they ultimately ignored her to death.

127.   With regard to Defendant CITY OF SAN ANTONIO, the arresting officers discriminated against Plaintiff-Decedent JANICE DOTSON-STEPHENS when they chose to disregard department policies, specifically "San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons*" [Plaintiffs' Complaint Exhibit 12], and process her for "Emergency Detention." On information and belief, police officers employed by Defendant CITY OF SAN ANTONIO routinely transport arrestees to jail and book them rather than transport them to the hospital for Emergency Detention. In order to take the path of least resistance, it is commonly known throughout magistration that officers would rather drop arrestees off at magistration for booking to jail rather than transporting them to Emergency Detention in order to avoid the time and paperwork necessary to process them and abide by city and department policies. In Plaintiff-Decedent JANICE DOTSON-STEPHENS' case, that common practice caused her to suffer through her five-month incarceration and led to her death because all Defendants discriminated against her based on her mental disability.

---

[117] *See McCoy v. Tex. Dep't of Criminal Justice,* No. C-05-370, 2006 U.S. Dist. LEXIS 55403 (S.D. Tex. 2006) at 7; *see also Wright v. Tex. Dep't of Criminal Justice*, 2013 U.S. Dist. LEXIS 176222, 2013 WL 6578994, at 4-5 (N.D. Tex. Dec. 16, 2013) (denying defendant's Rule 12(b)(6) motion to dismiss on plaintiff's ADA claims where plaintiff alleged facts sufficient to plead intentional discrimination—specifically, defendant's failure to provide reasonable accommodations to a suicidal prisoner who later killed himself).

## DAMAGES FOR PLAINTIFFS

128.    Defendants are jointly and severally liable for the wrongs complained herein, either by virtue of direct participation, acting in concert, or by virtue of encouraging, aiding, abetting, committing, and or ratifying and condoning the commission of the above described acts and/or omissions.

129.    Plaintiffs and Plaintiff-Decedent JANICE DOTSON-STEPHENS suffered compensatory, special, and punitive damages and are entitled to the maximum amounts allowed by law for the following:

    a.  extreme mental anguish and emotional distress as a result of being held in indefinitely in custody without proper medical and mental health treatment;
    b.  violation of Plaintiff-Decedent JANICE DOTSON-STEPHENS' civil rights by Defendants; and
    c.  punitive damages for Defendants' egregious acts and omissions.

130.    Additionally, as the actions and omissions of Defendants, their agents, employees, and/or representatives, proximately caused and/or were the moving force of the injuries and damages to Plaintiffs and were the moving force of the wrongful death of Plaintiff-Decedent JANICE DOTSON-STEPHENS. Plaintiffs assert claims under 42 U.S.C. § 1983 and the wrongful death and survival statutes as specifically pled herein.

131.    Further, Plaintiffs MICHELLE DOTSON, BRIDGETTE LOTT, REGINOLD STEPHENS, and RONALD DOTSON in their capacity as heirs-at-law to the Estate of JANICE DOTSON-STEPHENS, assert a survival claim on behalf of the estate, which has incurred damages including, but not limited to, the following:

    a.  past physical pain and suffering;
    b.  past mental anguish;
    c.  loss of services;
    d.  funeral and/or burial expenses; and
    e.  attorneys' fees and costs pursuant to 42 U.S.C. § 1988, or as allowed by law.

132.    Plaintiffs MICHELLE DOTSON, BRIDGETTE LOTT, REGINOLD STEPHENS, and RONALD DOTSON, in their individual capacities asserting wrongful death claims, have

incurred damages including, but not limited to, the following:

     a.  past and future mental anguish;

     b.  past and future loss of companionship, society, services, and affection of JANICE DOTSON-STEPHENS; and

     c.  attorneys' fees and costs pursuant to 42 U.S.S. § 1988 or as allowed by law.

133.    The Fifth Circuit has held that 42 U.S.C. § 1988 incorporates state law wrongful death and survival remedies under § 1983, thus allowing the surviving relatives of an individual killed as a result of a § 1983 violation to recover for their own injuries arising out of the wrongful death.[118] In denying defendants' motion to dismiss in the *Borum* case, the Northern District Court found that because the wrongful death and survival remedies there arose from § 1983 rather than from state law, the Texas Tort Claims Act does not operate to immunize Defendant from liability.[119] Likewise, here Plaintiffs seek damages for Plaintiff-Decedent JANICE DOTSON-STEPHENS' death in accordance with the wrongful death and survival remedies to fully compensate them for their tragic loss.

134.    Pursuant to 42 U.S.C. § 1988, Plaintiffs request and are entitled to attorney's fees and court costs for litigation of this matter, and all other relief plaintiffs are entitled to under the law.

### PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs RONALD DOTSON, individually and as the personal representative of Plaintiff-Decedent JANICE DOTSON-STEPHENS, MICHELLE DOTSON, BRIDGETTE LOTT and REGINOLD STEPHENS, respectfully pray that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiffs against Defendants, jointly and severally, for damages in an

---

[118] *See Rhyne v. Henderson Cnty.*, 973 F.2d 386, 390-91 (5th Cir. 1992).

[119] *Borum v. Swisher Cty.*, No. 2:14-CV-127-J, 2014 U.S. Dist. LEXIS 140321, at *27-28 (N.D. Tex. 2014) discussing *Brown v. Wichita Cnty.*, Tex., CIV.A. 7:05-CV-0108O, 2009 U.S. Dist. LEXIS 68957, 2009 WL 2393821, at *4 (N.D. Tex. Aug. 4, 2009), *aff'd sub nom. Brown v. Bolin*, 500 F. App'x 309 (5th Cir. 2012) ("if a state wrongful death claim is brought in conjunction with a section 1983 action, the county is no longer immune, as any attempt to provide immunity over and above those already provided in section 1983 directly violates federal law").

amount within the jurisdictional limits of the Court; together with pre-judgment interest at the maximum rate allowed by law; post-judgment interest at the legal rate, costs of the court; and such other and further relief to which the Plaintiffs may be entitled at law or in equity.

Respectfully submitted,

By: //s// Leslie Sachanowicz
    Leslie Sachanowicz
    Texas Bar No. 17503200
    Email: les.law@hotmail.com
    Tel. (210) 883-8565

    Mary Pietrazek
    Texas Bar No. 24102358
    Email: pzklaw@gmail.com

    702 Donaldson Avenue, Suite 206
    San Antonio, Texas 78201
    Tel. (210) 951-9795
    Fax. (210) 855-2045
    Attorneys for Plaintiffs

**PLAINTIFFS HEREBY DEMAND TRIAL BY JURY**

## CERTIFICATE OF SERVICE

This is to certify that a correct copy of the above foregoing Amended Complaint has this the 22nd day of May, 2019 been forwarded to:

Robert W. Piatt, III                              VIA E-FILING SERVICES
Assistant District Attorney
Bexar County Criminal District Attorney
101 W. Nueva – Civil Division
San Antonio, Texas 78205
Robert.piatt@bexar.org
Attorney for Bexar County
And Sheriff Javier Salazar
Bexar County Pre-Trial Services
And Mike Lozito


Mark Kosanovich                                   VIA E-FILING SERVICES
Fitzpatrick & Kosanovich, PC
P.O. Box 831121
San Antonio, Texas 78283-1121
mk@fitzkoslaw.com
Attorney for City of San Antonio
And Michael Kohlleppel


Laura A. Cavaretta                                VIA E-FILING SERVICES
Cavaretta, Katona & Leighner PLLC
One Riverwalk Place
700 N. St. Mary's Street, Suite 1500
San Antonio, Texas 78205
cavaretta@ckl-lawyers.com
Attorney for University Health System