IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MICHELLE DOTSON, *et al*<br>Plaintiffs<br><br>-vs-<br><br>BEXAR COUNTY HOSPITAL<br>DISTRICT, D/B/A UNIVERSITY<br>HEALTH SYSTEM, *et al*<br>Defendants | SA-19-CV-00083-XR |

# ORDER

On this day, the Court considered Defendant Bexar County Hospital District d/b/a University Health System's ("UHS") Motion to Dismiss (ECF No. 57), Plaintiffs' Response in Opposition (ECF No. 62), and UHS's Reply (ECF No. 64). The Court also considered Defendant Jessica C. Yao's ("Yao") Motion to Dismiss (ECF No. 65), Plaintiffs' Response in Opposition (ECF No. 68), and Yao's Reply (ECF No. 69). For the reasons stated herein, Defendant UHS's Motion to Dismiss is GRANTED in part and DENIED in part, and Defendant Yao's Motion to Dismiss is GRANTED.

## BACKGROUND[1]

Plaintiffs are surviving family members of Janice Dotson-Stephens ("Ms. Dotson-Stephens"). Ms. Dotson-Stephens died on December 14, 2018 after spending 150 continuous days incarcerated as a pretrial detainee in the Bexar County jail. Ms. Dotson-Stephens' death was the result of "atherosclerotic cardiovascular disease," or an enlarged heart with narrowing of the

---

[1] For purposes of this analysis, the Court must accept as true all of the factual allegations in Plaintiffs' Fourth Amended Complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

1

vessels, with schizoaffective disorder as a contributing factor. The history of tragic events leading up to Ms. Dotson-Stephens' death, as relevant to Defendants UHS and Yao, is as follows.

Ms. Dotson-Stephens had a decades-long history of mental illness (specifically, schizoaffective disorder) as well as hypertension. She had been involuntarily committed at the San Antonio State Hospital numerous times when she experienced "crisis episodes," which were characterized by her inability to think clearly and by hallucinations, disorientation, and confusion. During those commitments, doctors at the State Hospital were able to stabilize Ms. Dotson-Stephens through medication. Ms. Dotson-Stephens' mental illness prevented her from performing major life activities, such as working and caring for herself. Ms. Dotson-Stephens received Social Security disability benefits because she was unable to work due to her mental illness.

In addition to her history of health issues, Ms. Dotson-Stephens also had a history with the San Antonio Police Department ("SAPD") spanning from July 1996 through July 2018. Ms. Dotson-Stephens had at least three documented "mental health disturbance" situations involving SAPD, two of which required "emergency mental health detentions" occurring on March 18, 2014 and September 1, 2017.

On or about July 17, 2018, Ms. Dotson-Stephens was arrested by SAPD for misdemeanor criminal trespassing at Mount Zion Sheltering Arms, an affordable housing complex for the elderly and disabled where her estranged husband resided. During her interactions with SAPD leading up to her arrest, Ms. Dotson-Stephens exhibited behavior consistent with mental illness, including incoherent and erratic behavior. Ms. Dotson-Stephens was processed and jailed for the misdemeanor criminal trespassing allegation, where an unknown Bexar County jail employee was responsible for her screening.

From July 17, 2018 until her death on December 14, 2018, Ms. Dotson-Stephens was housed in the Bexar County jail's "Infirmary/OB + Annex" under the care of Defendants UHS and Yao.[2] According to medical records received from Defendants, Ms. Dotson-Stephens' chart listed her referral reasons as a history of hypertension and schizophrenia, and described her as "severely impaired" and having a "chronic mental illness." Ms. Dotson-Stephens' intake record reflects and acknowledges prior hospitalizations related to mental illness. UHS documented Ms. Dotson-Stephens' history of mental illness going back as far as 2007, indicating they had copies of her medical and mental health history.

From the time of her arrest on July 17, 2018 until her death on December 14, 2018, Ms. Dotson-Stephens never appeared before a judge or saw the inside of a courtroom.[3] On August 20, 2018, a UHS psychiatrist wrote to the Bexar County court that Ms. Dotson-Stephens "may be unable to assist her attorney in the preparation of her defense due to mental illness and may require a competency evaluation." On August 27, 2018, the Bexar County judge presiding over Ms. Dotson-Stephens' case issued an order for UHS to perform a competency evaluation on Ms. Dotson-Stephens and to file the report with the court by September 27, 2018. The court ordered Ms. Dotson-Stephens' offense report be forwarded to UHS on September 5, 2018. It is unknown whether UHS ever performed a complete mental health evaluation before Ms. Dotson-Stephens' death on December 14, 2018; if they did, there is no record of it in Ms. Dotson-Stephens' jail or medical records.

---

[2] According to Plaintiffs' Fourth Amended Complaint, Defendant UHS is responsible for the medical treatment of all inmates at the Bexar County jail, and Defendant Yao was the Acting Director for DHS during the relevant time period of July 17, 2018 through December 14, 2018.

[3] According to Plaintiffs' Fourth Amended Complaint: Ms. Dotson-Stephens was not appointed an attorney until August 8, 2018; it is unknown whether she ever met with her court-appointed attorney before her death on December 14, 2018; and according to county clerk and district clerk records, Ms. Dotson-Stephens refused interviews on July 18, 27, 28, 29, 30, and August 4, 2018 and refused to go to court, including refusing to go to jail court on August 17, 2018.

After her arrest on July 17, 2018, Ms. Dotson-Stephens remained under the care of Defendants UHS and Yao until her death on December 14, 2018. During those 150 days, Ms. Dotson-Stephens was seen by at least thirty-two (32) different UHS employees or contractors, including at least once by Defendant Yao, for a total of 494 times – on average, over three (3) times per day. She refused meals at least 102 times. She began refusing fluids on October 12, 2018. She had auditory and visual hallucinations 117 times. She continued to talk to herself and to people who were not there. She refused medical care, day area access, showers, meals, and vital sign measurements. She exhibited daily indicators of schizophrenia and 174 documented instances of schizoaffective disorder. She was noncompliant with medical staff and refused medication.

UHS documented and knew all of the above, and Ms. Dotson-Stephens' documented mental health history was readily ascertainable to UHS and Yao throughout her incarceration. Yet, there is no record of any substantive mental health treatment or intervention, and Ms. Dotson-Stephens was not given any medications to treat either her mental illness or her hypertension. Instead, UHS records indicate 304 times that doctors and nurses would "continue to monitor" her. Ms. Dotson-Stephens lost 136 pounds in 150 days under the care of Defendants UHS and Yao.[4] When she died on December 14, 2018, her chart history indicated: "61 y.o. female with history of schizoaffective, HTN. Noncompliant with any medical or mental health intervention/medications since arrival to Bexar County jail in July 2018."

After Ms. Dotson-Stephens' death, Plaintiffs filed the present lawsuit against Bexar County and various other defendants, alleging violations of Ms. Dotson-Stephens' rights under the U.S. and Texas constitutions and several other claims. In their Fourth Amended Complaint (ECF No. 51), Plaintiffs allege Defendants UHS and Yao both deprived Ms. Dotson-Stephens of her civil

---

[4] Ms. Dotson-Stephens' weight at intake with UHS was 290.61 pounds, and her weight at the time of her autopsy was 154 pounds.

rights under the Due Process and Equal Protection clauses of the Fourteenth Amendment (Count I); that they violated Ms. Dotson-Stephen' Fourteenth Amendment right to medical care through unconstitutional conditions of confinement (Count II(A)); that they violated Ms. Dotson-Stephens' fundamental constitutional right to be protected from cruel and unusual punishment (Count II(B)); that, through *de facto* policies, they engaged in a pattern and practice of "dereliction of duty to protect and keep detainees safe" (Count II(C)); and that they violated Ms. Dotson-Stephens' constitutional rights by failing to train and/or supervise their subordinates (Count II(D)). Additionally, Plaintiff alleges Defendant UHS discriminated against Ms. Dotson-Stephens in violation of the ADA and the Rehabilitation Act (Count IV). Defendants UHS and Yao have each separately moved to dismiss Plaintiffs' claims against them for failure to state a claim. ECF Nos. 57, 65.

## DISCUSSION

### I. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the complaint does not need to contain detailed factual allegations, it must contain enough factual allegations to "raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. The plaintiff has an obligation to present more than labels, conclusions, and formulaic recitations of the elements to avoid dismissal. *Id.* In considering a

Rule 12(b)(6) motion, the Court must accept the factual allegations in the complaint and take them in the light most favorable to the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the court does not accept conclusory allegations or unwarranted deductions of fact as true. *Tuchman v. DSC Commc'ns. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

## II.     Plaintiffs' Constitutional Claims

Most of Plaintiffs' claims against Defendants UHS and Yao are brought under Section 1983. Section 1983 liability results when a person acting under color of state law deprives another of rights secured by the Constitution or federal law. 42 U.S.C. § 1983; *Doe v. U.S.*, 831 F.3d 309, 314 (5th Cir. 2016). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979). A plaintiff must establish two elements under a Section 1983 claim: (1) a constitutional violation; and (2) that the defendants were acting under color of state law when they committed the constitutional violation. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

Plaintiffs' claims against Defendant Yao are only brought against her in her official capacity as "Acting Director" of UHS during the relevant time period. ECF No. 51 ¶ 9. A Section 1983 suit for damages against a public official in his or her "official capacity" is, in reality, a suit against the governmental entity that employs the official. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (state officers sued for damages in their official capacity assume the identity of the government that employs them); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) (official capacity suits are simply another way of pleading an action against an entity of which an officer is an agent). Because Plaintiffs allege that Defendant Yao was employed by Defendant UHS, any claims brought against both Defendants UHS and Yao are redundant as to Defendant Yao.

### a. Due Process and Equal Protection

In Count I, Plaintiffs allege that "all named Defendants," including Defendants UHS and Yao, "acted contrary to law and unreasonably deprived Ms. Janice Dotson-Stephens of her privileges and immunities guaranteed by the Due Process and Equal Protection Clauses under the Fourteenth Amendment…in a willful and wanton fashion and they were deliberately indifferent," causing Ms. Dotson-Stephens "to suffer immeasurable injury and death." ECF No. 51 ¶ 70. Plaintiffs allege that "all Defendants either deliberately ignored existing policies or they did not adopt policies required by Texas law to protect" Ms. Dotson-Stephens while she was incarcerated, "thereby creating *de facto* policies through customs of ignoring the law." ECF No. 51 ¶ 72. However, Plaintiffs go on to allege various facts that relate solely to other Defendants, not to Defendants UHS or Yao. *See* ECF No. 51 ¶ 73–89.

Defendant UHS urges in its motion to dismiss that Plaintiffs make these allegations as to "all defendants…without providing a factual basis for this assertion or any allegations specific as to UHS or a UHS employee." ECF No. 57 ¶ 12. Defendant Yao similarly argues that Plaintiffs' allegations "are no more than the labels and conclusions reciting various causes of action." ECF No. 65 ¶ 14. The Court agrees. A Section 1983 complainant must put forth allegations that "rest[] on more than conclusions alone." *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). Here, Plaintiffs have failed to state any specific facts as to Defendants UHS or Yao that could "raise a right to relief above a speculative level" for alleged deprivation of Ms. Dotson-Stephens' Due Process or Equal Protection rights. *Twombly*, 550 U.S. at 555. Accordingly, the Court will GRANT Defendants UHS and Yao's motions to dismiss as to Count I.

### b. Failure to Provide Medical Care

Plaintiffs attempt to allege in two separate counts that Defendants UHS and Yao violated Ms. Dotson-Stephens' right to adequate medical care under the Fourteenth Amendment (Count II(A), ECF No. 51 ¶ 92–97) and her right to be protected from cruel and unusual punishment (Count II(B), ECF No. 51 ¶ 98–101). Because both of these claims against Defendants UHS and Yao are rooted in Defendants' obligation to provide adequate medical care to a pretrial detainee under the Fourteenth Amendment, the Court will address them as a single claim.

While convicted prisoners have a right to be free from cruel and unusual punishment under the Eighth Amendment, pretrial detainees have a "right to be free from punishment altogether" that flows from the due process guarantees of the Fourteenth Amendment. *See Colle v. Brazo Cty.*, 981 F.2d 237, 244 (5th Cir. 1993); *Estate of Henson v. Wichita Cty., Tex.*, 795 F.3d 456, 462 (5th Cir. 2015). The legal standard used to measure the due process rights of a pretrial detainee depends on whether a challenge is brought to constitutionality of a "condition of confinement" or to "an episodic act or omission of an individual officer." *Henson*, 795 F.3d at 462. "Although failure-to-provide-medical-care claims are generally brought as episodic-acts-or-omissions claims, a plaintiff may assert a conditions-of-confinement claim based on injuries suffered as a result of not receiving proper medical attention if the plaintiff does not implicate the acts or omissions of individuals but rather the jail's system of providing medical care to inmates." *Id.* at 463; *see also Montano v. Orange Cty.*, 842 F.3d 865 (5th Cir. 2016). Plaintiffs here explicitly restrict their allegations under all Count II claims as conditions-of-confinement challenges. ECF No. 51 ¶ 90–110.

A "condition of confinement" claim is a challenge to general conditions, practices, rules, or restrictions of pretrial confinement. *Henson*, 795 F.3d at 463. Three elements must be

established to prove an unconstitutional condition of confinement: (1) a rule or restriction or the existence of an identifiable intended condition or practice, or that the jail official's acts or omissions were sufficiently extended or pervasive, (2) which was not reasonably related to a legitimate governmental objective, and (3) which caused the violation of a detainee's constitutional rights. *Montano*, 842 F.3d at 874 (citing *Henson*, 795 F.3d at 468). Whereas a plaintiff bringing an episodic-acts-or-omissions claim must demonstrate actual intent to punish, a plaintiff bringing a conditions-of-confinement claim is relieved from that burden because intent may be inferred from the decision to expose a detainee to an unconstitutional condition. *Shepherd v. Dallas Cty.*, 591 F.3d 445, 452 (5th Cir. 2009).

A condition is usually the manifestation of an explicit policy or restriction: the number of bunks per cell, mail privileges, disciplinary segregation, *etc*. *See Scott v. Moore*, 114 F.3d 51, 53 n.2 (5th Cir. 1997) (*en banc*). But in some cases, a condition may reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions "sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 645 (5th Cir. 1996). A plaintiff may establish a *de facto* policy through evidence such as commissioned reports, consistent employee testimony, and "other documentary evidence indicating inmates received 'grossly inadequate' treatment." *Montano*, 842 F.3d at 875. A plaintiff need not prove that another detainee suffered the same fate as a result of a custom or policy, but "isolated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate." *Id.* at 874. Further, to constitute impermissible punishment, the condition must be one that is "arbitrary or purposeless" or "not reasonably related to a legitimate goal." *Bell v.*

9

*Wolfish*, 441 U.S. 520, 539 (1979). Put differently, the constitutional issue is whether the condition is reasonably related to a legitimate governmental objective. *Henson*, 795 F.3d at 463.

Plaintiffs allege that "the number of times 32 doctors, nurses, and counselors at UHS recognized [Ms. Dotson-Stephens'] constant presentation of mental illness, yet simply documented her chart as some sort of 'check-the-box' formality, demonstrates a pervasive system-wide policy." ECF No. 51 ¶ 95. According to Plaintiffs, "those 32 UHS doctors, nurses, and counselors" ignored Ms. Dotson-Stephens' symptoms "on a daily basis" and "deliberately turned a blind-eye [sic] to her suffering." *Id.* at ¶ 95, 100. Plaintiffs argue that Ms. Dotson-Stephens' loss of 136 pounds in five months ("essentially starving herself") is further evidence of Defendants UHS and Yao's deliberate indifference. *Id.* Plaintiffs further allege that Defendants UHS and Yao not treating Ms. Dotson-Stephens, not medicating her, and not attempting to have her transferred to the State Hospital is evidence of the "level of medical care provided generally" by Defendants UHS and Yao. *Id.* at ¶ 96, 101. Plaintiffs urge that Defendants UHS and Yao "did not meet a basic duty to provide [Ms. Dotson-Stephens'] 'basic human needs' because they allowed a mentally unstable detainee to refuse food and water without intervention for 150 days." *Id.* at ¶ 97.

Defendants UHS and Yao each argue that Plaintiffs have failed to state a claim because they fail to allege "what care *should have been provided* or how the failure to provide such care caused her injury or death." ECF Nos. 57 ¶ 11, 65 ¶ 13. Defendants do not argue that their treatment of Ms. Dotson-Stephens was somehow reasonably related to a legitimate governmental objective. Instead, they focus on the purported deficiency of Plaintiffs' complaint, such as Plaintiffs' failure to specifically allege "that medication for schizo-effective [sic] disorders should be given to patients who are not is admitted [sic] to a State Hospital" or "that [Ms. Dotson-

Stephens'] hypertension needed to be treated with medication." ECF No. 57 ¶ 11. Defendants UHS and Yao argue that Plaintiffs "have provided no description of any acts or omissions by [UHS or Yao] which violated [Ms. Dotson-Stephens'] civil rights or caused her death." *Id.* The Court disagrees.

Plaintiffs' allegations that Defendants UHS and Yao were responsible for the medical care of pretrial detainees, that they knew Ms. Dotson-Stephens suffered from hypertension and schizoaffective disorder, that over five months and through dozens of personnel members they ignored her symptoms and provided no medical care outside of "monitoring" her, and that as a result Ms. Dotson-Stephens lost 136 pounds in five months and ultimately died of hypertension and schizoaffective disorder, if true, support a viable claim for unconstitutional conditions of confinement. A *de facto* policy that denies a pretrial detainee medical care and serves no legitimate government interest "transgresses the substantive limits on state action set by…the Due Process Clause." *Montano*, 842 F.3d at 878 (citing *Shepherd*, 591 F.3d at 453–54). Plaintiffs have stated "enough facts to state a claim to relief that is plausible on its face" so as to survive a motion to dismiss. *Twombly*, 550 U.S. at 570. However, Plaintiffs' claims of failure to provide medical care as an unconstitutional condition of confinement against Defendants UHS and Yao are redundant of one another. As stated above, Defendant Yao is only named in her official capacity, so a claim against her is really a claim against her employer – UHS. Thus, the Court will DISMISS this claim as to Defendant Yao only.

c. **Failure to Keep Safe**

In Count II(C), Plaintiffs allege that multiple Defendants, including UHS and Yao, have engaged in a pervasive pattern and practice of "dereliction of duty to keep detainees safe during their incarceration." *See* ECF No. 51 ¶ 102–106. Plaintiffs allege that Defendants have failed to

follow documented policies and procedures, "creating *de facto* policies of improperly protecting and caring for inmates with mental health issues." ECF No. 51 ¶ 102. Plaintiffs cite portions of various Texas laws that they allege Defendants have failed to comply with, as well as a 2018 Jail Inspection Report from the Texas Commission on Jail Standards that found "multiple deficiencies" in the Bexar County jail.

Taken in the light most favorable to Plaintiffs, these allegations could support a conditions-of-confinement claim on the same basis as above – a failure to provide medical care. In particular, the 2018 Report may provide support for Plaintiffs' claim that there was a *de facto* policy that amounted to an unconstitutional condition. *See Montano*, 842 F.3d at 875 (county-commissioned report is one type of evidence used to support a *de facto* policy claim). The allegations do not, however, support a separate cause of action under Section 1983 or any state law. To the extent that Count II(C) attempts to assert claims against Defendants UHS and Yao separate from the failure-to-provide-medical-care claims discussed above, such claims are DISMISSED.

### d. Failure to Train and/or Supervise

In Count II(D),[5] Plaintiffs allege that Defendants, including Defendants UHS and Yao, "failed to train and/or supervise their subordinates, and those failures caused" a violation of Ms. Dotson-Stephens' rights. ECF No. 51 ¶ 107. In support of this allegation, Plaintiffs allege that all Defendants failed to follow provisions of the Texas Administrative Code requiring staff training with regard to procedures for intake screening to identify mental illness. *Id.* at 108. Plaintiffs allege that a 2018 "Annual Report," attached as Exhibit 9 to Plaintiffs' Fourth Amended Complaint, finds that "the administration was unable to provide training records to confirm that detention officers received suicide prevention training in accordance with the approved operational

---

[5] Plaintiffs appear to have mislabeled this Count as Count II(C), despite there already being a preceding Count II(C). For clarity's sake, the Court refers to the later-pleaded count as Count II(D).

plans." *Id.* at ¶ 109. Plaintiff further alleges Defendants UHS and Yao should have known that failing to train "would cause employees to violate the constitutional rights of members of the public they encounter." *Id.* at ¶ 110.

Failure to train can form the basis of Section 1983 liability "only where the failure to train amounts to deliberate indifference" to the rights of the persons affected. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Even taking Plaintiffs' allegations as true, they amount to no more than conclusory statements that fail to "raise a right to relief above a speculative level" as to Defendants UHS and Yao. *Twombly*, 550 U.S. at 555. Thus, the Court will GRANT Defendants UHS and Yao's motions to dismiss any claim of failure to train and/or supervise in violation of Section 1983.

      e. **Episodic Acts and Omissions**

In Count III, Plaintiff alleges episodic-acts-or-omissions violations of Section 1983 against other Defendants in this case, but does not name either Defendant UHS or Yao. In their opposition to Defendant Yao's motion to dismiss, Plaintiffs attempt to argue that Defendant Yao "should have been added under Count III…rather than under Count II for the Fourth Amended Complaint," and that Plaintiffs "intent was to put her under Count III." ECF No. 68 at 4. Plaintiffs confusingly state that an episodic-acts-or-omissions claim "faults specific officials for their acts or omissions" and Defendant Yao "is a party to this suit as an individual in her official capacity." *Id.* However, as explained above, Plaintiffs have explicitly named Defendant Yao in this lawsuit in her official capacity only. ECF No. 51 ¶ 9 (naming Defendant Yao "officially"). A Section 1983 suit against a public official in her official capacity is, in reality, a suit against the entity that employs her. *Hafer*, 502 U.S. at 21.

Regardless of whether Plaintiffs named Defendant Yao individually or officially, they have not stated a claim against her for an episodic-acts-or-omissions claim. Such a claim requires, among other things, a showing of <u>subjective</u> deliberate indifference. *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019). The only specific facts about Defendant Yao in Plaintiffs' complaint are that she was the Acting Director of UHS at the time of Ms. Dotson-Stephens' incarceration and that she saw Ms. Dotson-Stephens one time during those 150 days. Taken as true, these facts would fail to state a claim for an episodic-acts-or-omissions claim against Defendant Yao.

### III. Plaintiffs' Disability Discrimination Claims

Plaintiffs allege that Defendant UHS discriminated against Ms. Dotson-Stephens because of her disability in violation of the Americans with Disabilities Act and the Rehabilitation Act. Plaintiffs allege that UHS "continually observed [Ms. Dotson-Stephens'] crisis episodes, such as her numerous hallucinations and outbursts, but rather than treating her with anti-psychotic medications or transferring her to the State Hospital, they ultimately ignored her to death," causing her to suffer more pain and punishment than a non-disabled pretrial detainee. ECF No. 51 at 38–39. UHS devotes a mere four lines to Plaintiffs' disability discrimination claims, stating that because Plaintiffs assert these claims against "University Hospital Services," a name under which Defendant UHS has never done business, these claims should be dismissed. The Court is unpersuaded that Plaintiffs' misnomer of UHS in the header of its disability discrimination claims constitute a failure to state a claim.[6] Further, the Court finds that Plaintiffs have pleaded facts sufficient to state a plausible claim of disability discrimination by UHS.

---

[6] The Court notes, as Plaintiffs point out in their response to Defendant UHS's motion, that the incorrect name of "University Hospital Services" is only used once in the Fourth Amended Complaint, in the header for Count IV. ECF No. 62 at 13. The allegations under that header in paragraphs 120–126 refer to "UHS" which is the same way Plaintiffs refer to Defendant UHS throughout the Complaint. UHS fails to respond to Plaintiffs' explanation in their Reply or to raise any additional points at all about Plaintiffs' disability discrimination claims. Defendant UHS has pointed the

14

Both the Americans with Disabilities Act ("ADA") and the Rehabilitation Act require public entities (or private entities receiving federal funding) to provide reasonable accommodations to assist disabled persons in accessing public programs and services. 42 U.S.C. §§ 12101 *et seq.*; 29 U.S.C. §§ 701 *et seq*; *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011). Establishing a *prima facie* case of disability discrimination[7] requires a plaintiff to prove (1) that she is a qualified individual; (2) that she is being excluded from participation in, or is being denied benefits, services, programs, or other activities for which a public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of her disability. *See Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004).

Here, Plaintiffs adequately allege facts to support that Ms. Dotson-Stephens was disabled by her mental illness, that UHS knew of her disability, and that UHS failed to provide medical care during her incarceration. Whether UHS denied Ms. Dotson-Stephens medical care due to her disability, or failed to reasonably accommodate Ms. Dotson-Stephens' disability (or both) may or may not be borne out through discovery; whether either of these constitutes a violation of the ADA or Rehabilitation Act for which UHS can be held liable may or may not be decided in a later dispositive motion or at trial. But at the present motion to dismiss phase, the Court finds Plaintiffs have sufficiently alleged a plausible disability discrimination claim. Therefore, UHS's motion to dismiss Plaintiffs' claims of disability discrimination is DENIED.

---

Court to no legal authority that stands for the proposition that the inadvertent misnaming of a party constitutes the failure to state a claim against that party.

[7] Claims under both the ADA and the Rehabilitation Act are analyzed similarly – the difference being that the ADA applies only to public entities while the Rehabilitation Act applies to any federally funded programs or activities, whether public or private. *See Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011); *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). For consideration of the present motion to dismiss, the Court need not distinguish between the two statutes.

## CONCLUSION

For the foregoing reasons, Defendant UHS's Motion to Dismiss (ECF No. 57) is GRANTED in part and DENIED in part, and Defendant Yao's Motion to Dismiss (ECF No. 65) is GRANTED. As to Defendant UHS, Plaintiffs' claims (1) under Section 1983 for failure to provide medical care resulting in an unconstitutional condition of confinement in violation of the Fourteenth Amendment and (2) disability discrimination in violation of the ADA and Rehabilitation Act survive UHS's motion to dismiss. All other claims against Defendant UHS are DISMISSED. As to Defendant Yao, Plaintiffs' claims against her in her official capacity are DISMISSED as redundant of the claims against Defendant UHS.

It is so ORDERED.

SIGNED this 25th day of November, 2019.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE